UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAYDAY HEALTH,<br><br>    Plaintiff,<br><br> v.<br><br>MARTY J. JACKLEY, Attorney General of South Dakota, in his official capacity,<br><br>    Defendants. | Case No. 1:26-cv-78<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

**PRELIMINARY STATEMENT**

1. This action seeks to prevent Defendant South Dakota Attorney General Marty J. Jackley from punishing Plaintiff Mayday Health for publishing truthful information about reproductive healthcare. The Attorney General—who disagrees with the lawful choices people may make with the information Mayday publishes, as well as Mayday's conviction that access to abortion is a fundamental human right—has demanded that Mayday desist from publishing this information, threatening penalties unless Mayday self-censors. But the First Amendment prohibits the Attorney General from retaliating against Mayday and restraining its speech because of hostility toward Mayday, the information Mayday publishes, and the beliefs that impel Mayday to publish it. Mayday requests declaratory and injunctive relief to prevent further violation of its constitutional rights.

2. Mayday is a 501(c)(3) non-profit public health education organization dedicated to providing accurate, evidence-based information about reproductive healthcare. Based in New York, Mayday operates a globally-accessible website (https://mayday.health) that publishes truthful information about reproductive healthcare, including the safe and effective use of FDA-approved abortion pills such as mifepristone and misoprostol. Mayday does not sell, handle, provide, offer for sale, or distribute any medications. It does not benefit from the sale of abortion

1

medication, and has no customers. Nor does it monetize its users' data. Mayday is a donor-funded information clearinghouse—an educational resource with links to other websites—that provides people with the information they need to make informed reproductive healthcare choices, including (if they want) to terminate pregnancies lawfully and safely despite residing in places that have burdened or outlawed abortion. To raise awareness about reproductive healthcare options in the United States, Mayday publicizes its website with signs, billboards, and/or other in-person communications to audiences who may find the information it provides and resources to which it links useful—including in states where abortion is restricted.

3.  That is what happened here. After discovering Mayday had placed placards at South Dakota gas stations stating "Pregnant? Don't want to be? Learn more at www.mayday.health," South Dakota Governor Larry Rhoden directed Attorney General Jackley to shut down Mayday's New York-based website, ban Mayday from publicizing its website to audiences in South Dakota, and generally prevent Mayday from disseminating truthful noncommercial information about reproductive healthcare in the future. The campaign arose from these officials' professed animus toward Mayday and its beliefs. That animus is demonstrated by press releases the Governor and Attorney General jointly released announcing the Governor's request to prosecute Mayday under any pretext the Attorney General could devise; the Attorney General's press release announcing his threat to do so under the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24, even though Mayday's publications are not trade or commerce regulable by that law; the Attorney General's perfunctory sham "investigation" predictably finding no deception that would warrant enforcement; the Attorney General's resulting focus instead on statements from *third-party* websites that Mayday merely linked to and neither authored nor published; and the fact the threatened deceptive trade practices claims—as Mayday explained in a letter response to the Attorney General's demand—are so objectively frivolous that they could not possibly be asserted with any reasonable expectation of a violation.

4.  The First Amendment shields Mayday from this bad-faith retaliation transparently intended to chill its speech and score political points. The Attorney General may not punish

2

Mayday for publishing truthful information on a public issue, *Bartnicki v. Vopper*, 532 U.S. 514, 527-28 (2001), including information about legal abortion services in jurisdictions that have made abortion illegal, *Bigelow v. Virginia*, 421 U.S. 809, 815 n.5 (1975). *Bigelow* is controlling. That case held that a Virginia statute criminalizing the dissemination of information that allegedly "encourage[d] or prompt[ed] the procuring of an abortion," *id.* 811–12, infringed a Virginia newspaper's right to report on and endorse an organization that facilitated access to abortions because the content "conveyed information of potential interest and value to a diverse audience— not only to readers possibly in need of the services offered, but also to those with a general curiosity about, or genuine interest in, the subject matter." *Id.* at 822 & n.7. Virginia had no legitimate "interest in shielding its citizens" from this information. *Id.* at 827-28. South Dakota does not either.

5. Mayday requests an order declaring the Attorney General's threatened prosecution unconstitutional; finding that Mayday's placards and website are protected by the First Amendment; and enjoining the Attorney General from future efforts to censor its expression.

## PARTIES

6. Plaintiff Mayday Health is a 501(c)(3) nonprofit organization existing under the laws of Delaware, with its principal place of business in New York.

7. Defendant Marty J. Jackley is the Attorney General of the State of South Dakota. He is sued in his official capacity as he is empowered to enforce state laws and bring actions on behalf of the State, including under SDCL § 37-24.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a) because Plaintiff's claims arise under the United States Constitution, as well as the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

9. This Court has authority under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to decide this dispute and award relief because it presents an actual case or controversy within the Court's jurisdiction. This Court has authority to issue the requested injunctive relief pursuant to

42 U.S.C. § 1983. And this Court has authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

10. The Court has personal jurisdiction over the Attorney General under Fed. R. Civ. Proc. 4(k)(1)(A) and NY CPLR § 302 because he has engaged in specific conduct purposefully aimed at chilling and censoring the speech of a New York-based organization in the State of New York, including by transmitting by U.S. Mail censorious threats to Mayday in the Southern District of New York where Mayday is headquartered and speaks. *See, e.g.*, *Media Matters for Am. v. Paxton*, 138 F.4th 563, 577 (D.C. Cir. 2025); *Defense Distributed v. Grewal*, 971 F.3d 485, 495 & n.9 (5th Cir. 2020); *Twitter, Inc. v. Paxton*, 2021 WL 1893140, at *2 (N.D. Cal. May 11, 2021) (all holding personal jurisdiction existed over out-of-state attorneys general for this reason). Personal jurisdiction over the Attorney General also exists in this Court because the Attorney General's conduct that forms the basis for Mayday's claims occurred in New York at the Attorney General's direction. *See Grand River Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 167 (2d Cir. 2005) (asserting personal jurisdiction over out-of-state attorneys general whose purposeful New York conduct formed basis for claims). The Attorney General's actions have already caused and, unless enjoined, will continue to cause Mayday irreparable injuries in New York.

11. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) & (2) because the injuries giving rise to this action have been and will continue to be suffered by Mayday at its headquarters and principal place of operation in New York County, New York.

## FACTUAL ALLEGATIONS

### A. Mayday Publishes Truthful Public Health Information on Its Website

12. Mayday is a nonprofit health education organization that operates an online clearinghouse for reproductive health resources at https://mayday.health. The website was launched in June 2022 in response to the U.S. Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). Attached as **Exhibit A** is a page capture of Mayday's website, current as of this filing.

13. Mayday's mission is to "is to share information about abortion pills, birth control, and gender-affirming care in any state" and "empower people to make their own informed decisions about their own bodies." Ex. A.

14. Mayday's website asks the visitor what category of information they are looking for—abortion, morning-after pills, birth control, or gender-affirming care. *See* Ex. A. For each category, it then provides a series of links to third-party organizations that provide access to such medical care or other resources. For the abortion category, Mayday provides links to well-established third-party websites including Aid Access, Cambridge Reproductive Health Consultants, A Safe Choice, Abuzz, and We Take Care of Us. Mayday also links to organizations offering supporting services, including the Digital Defense Fund's privacy guide, the Miscarriage and Abortion Hotline, and the If/When/How Repro Legal Helpline.

15. Much of the information that Mayday's website links to is from clinicians, lawyers, and health experts. If medically appropriate, some of these third-party websites may provide access to abortion pills, such as mifepristone and misoprostol. The U.S. Federal Food and Drug Administration ("FDA") has repeatedly confirmed the safety of such medication, a conclusion supported by independent and rigorous scientific studies. *See, e.g.*, F.D.A. Center for Drug Evaluation & Research, App. No. 020687Orig1s020 at 12 (March 29, 2016) (confirming the "efficacy and safety" of medication abortion based on studying more than 2.5 million U.S. uses), at https://www.accessdata.fda.gov/drugsatfda_docs/nda/2016/020687Orig1s020Approv.pdf; Mifeprex REMS Study Group, *Sixteen Years of Overregulation: Time to Unburden Mifeprex*, 376 N. ENGL. J. MED. 790, 791 (2017) (same), at https://www.nejm.org/doi/full/10.1056/NEJMsb1612526; F.D.A., *Mifepristone U.S. Post-Marketing Adverse Events Summary Through Dec. 31, 2024* at 1 (2025) (zero fatalities "causally attributed to mifepristone" "with certainty"), at https://www.fda.gov/media/185245/download.

16. Mayday itself does not sell, handle or benefit from abortion pills and operates independently from organizations that do so. Nor does Mayday itself provide any medical or legal advice, charge any fee, collect any revenue related to the provision of medical or legal services, or

5

obtain any other valuable consideration in exchange for disseminating its message. It does not monetize its users' data.

17.     Rather, Mayday simply wants people to know their options regarding reproductive healthcare. The information it publishes is provided as a donor-funded public service—free of charge to users—as an expression of Mayday's values and beliefs.

18.     Through its website and advocacy, Mayday provides truthful, non-commercial information of public concern, including resources for individuals seeking to understand their reproductive healthcare options.

19.     Mayday believes its work is essential to ensuring that individuals, regardless of their location, can make informed decisions about their health and well-being.

B.     **Mayday Health Publicizes Its Website To South Dakotans**

20.     On December 8, 2025, Mayday placed signs at gas stations around South Dakota. The signs read: "Pregnant? Don't want to be?" with a prompt for consumers to "Learn more" by visiting Mayday's website, as shown below.



21.     In an interview with a local news station published the same day, Mayday Executive Director, Liv Raisner, explained that "everyone deserves access to accurate medical

6

information, and gas stations are great places to spread information."[1] Liv continued that it is Mayday's belief "that it's critical to reach people with health information at community hubs. Abortion in rural areas is a privacy issue. If there's one singular health clinic in the area, people talk. We want to make sure that people can learn their options anonymously and privately."

### C.  South Dakota Governor Rhoden Directs The Attorney General to Investigate and Punish Mayday by Any Means Available

22.  The next day, December 9, 2025, South Dakota Governor Larry Rhoden issued a press release touting a formal letter urging the Attorney General to "investigate a new abortion ad campaign, which appears to conflict with South Dakota's proud pro-life stance."[2] The press release quotes the Attorney General as saying: "We will review these ads and determine if any laws have been broken." Attached as **Exhibit B** is a copy of the press release.

23.  In his letter to the Attorney General, Governor Rhoden asked the Attorney General to "investigate" Mayday under the State's "pro-life laws, including SDCL 22-17-5.1 and 36-4-8"—which prohibit administering or providing abortions to pregnant women. The Governor accused Mayday of "advertising an illegal service in the state of South Dakota" and stated that "South Dakota has the most pro-life laws in the nation—I am proud of that fact. Our voters resoundingly supported those law with the defeat of Amendment G in the last election. This advertising campaign threatens the lives of children yet to be born in our state[.]"[3] The Governor continued that Mayday's "comments . . . make clear that they are facilitating the mailing of pills into our state, which would be illegal under the telemedicine abortion ban signed during the Noem-Rhoden Administration." Attached as **Exhibit C** is a copy of the Governor's letter.

24.  The Governor's letter failed to acknowledge that Mayday does not ship, mail, or otherwise handle abortion pills. Nor did it address the fact that the signs Mayday posted in South

---

[1] Gracie Terrall, Eric Mayer, *Abortion pill ads hit South Dakota gas stations*, Keloland (Dec. 8, 2025), https://tinyurl.com/2mesa2k4.
[2] South Dakota State News, Gov. Rhoden Calls Attorney General to Investigate Abortion Advertising Campaign (Dec. 9, 2025), https://tinyurl.com/6xdtmmmc.
[3] Office of the Governor Larry Rhoden, Letter to Attorney General Jackley (Dec. 9, 2025), https://tinyurl.com/2yuf9r2p.

7

Dakota gas stations merely asked the questions "Pregnant? Don't want to be?" and invited readers to learn more at its website.

### D. The Attorney General Mails Retaliatory Threats to Mayday in New York

25. The Attorney General accepted the Governor's charge and commenced a sham investigation into Mayday. Unable to investigate Mayday under the "pro-life" laws the Governor cited because Mayday does not provide abortions, the Attorney General directed his office to investigate Mayday for possible violations of the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-6. Attached as **Exhibit D** is the affidavit of Kayla Klemann, the official who conducted the investigation.

26. Klemann's "investigation" apparently involved reading Mayday's website, and reviewing some of the third-party websites to which Mayday's website links. The investigation did not find that any consumer had been misled by Mayday's website, or by the gas station signs publicizing it. *See generally* Ex. D. Klemann notes receiving only one complaint from one business, Cowboy Country Stores, that objected to the publication of Mayday's "abortion media campaign" on leased signs in front of its business—an objection to Mayday's expressed point of view, and a contractual matter for Cowboy Country Stores to take up with its media leasing agent, not actionable evidence of consumer deception or confusion that would normally warrant State intervention. *Id.* at ¶ 7.

27. The absence of any evidence of consumer harm is, of course, unsurprising: no one in South Dakota or anywhere else has been or could be deceived by the literally true public health information Mayday publishes and links to on its website, much less by its "Pregnant? Don't want to be?" placards that simply invite people to "learn more." The Attorney General's sham investigation makes plain what was obvious from the staged press releases calling for its commencement: that the task was to "put[] investigators to work" "searching the law books" "to pin some offense" on Mayday in retaliation for its speech, not to undertake a normal good faith investigation following up on any real suspicion of wrongdoing. *Morrison v. Olson*, 487 U.S. 654,

8

728 (1988) (Scalia, J., dissenting) (explaining that when "the prosecutor picks some person whom he dislikes or desires to embarrass, or selects some group of unpopular persons and then looks for an offense" it presents "the greatest danger of abuse") (quoting R. Jackson, The Federal Prosecutor, Address Delivered at the Second Annual Conference of United States Attorneys, April 1, 1940).

28.  Despite coming up empty handed, the Attorney General pressed on. On December 10, 2025, the Attorney General sent Mayday a letter (attached as **Exhibit E)** to an address in New York (as well as by e-mail) demanding that Mayday immediately desist from publishing information that could be used to facilitate "the delivery of abortion drugs to the State of South Dakota." Failure to comply, he threatened, exposed Mayday to "felony criminal consequences or civil penalties up to $5,000 per violation." *Id.* at 2. The letter falsely accuses Mayday of "urging women not to seek medical care after taking abortion pills" and claims (*id.* at 1), among other things, that Mayday had engaged in "deceptive act[s] or practice[s]" by republishing official FDA and other medical findings that abortion pills are safe and effective. *Id.* at 2. But beyond that, the Attorney General's allegations refer almost entirely to information published by and on linked third-party websites, not Mayday.

29.  Mayday responded by letter through counsel on December 19, 2025. This response is attached as **Exhibit F.** Objecting to the Attorney General's demand in its entirety, Mayday explained that it was a non-profit information resource that does not sell, handle, provide, offer for sale, or benefit from the sale of abortion medication. *Id.* at 1. It advised that Mayday accordingly does not engage in "the sale or advertisement of any merchandise" that is subject to the South Dakota deceptive trade practices law. SDCL § 37-24-6(1). *Id.* Instead, Mayday explained that it provides truthful information about healthcare options, including but not limited to abortion medications approved by the FDA for safe and effective use. It stressed that this information is not commercial speech subject to regulation under deceptive practices statutes under cases like *Lowe v. SEC*, 472 U.S. 181, 210-11 & n.58 (1985), much less the more specific kinds of advertisements that cases like *Hyde v. Franklin Am. Mortg. Co.*, 453 F. Supp. 3d 1293, 1308 (D.S.D. 2020) and *Cheval Int'l v. Smartpak Equine, LLC*, 2016 WL 1064496, at *12 (D.S.D. Mar. 15, 2016) have

9

found are necessary to come within the statute's ambit. Ex. F at 2. In fact, Mayday pointed out, the South Dakota deceptive practices statute includes a safe harbor that protects "publishers, broadcasters, printers, or other persons" when, like Mayday, they do not engage in any deliberately deceptive commercial advertising. SDCL § 37-24-11. Mayday made clear that the First Amendment imposed these limitations, alerting the Attorney General to *Bigelow*, 421 U.S. at 815 n.5, 822 n.7, 827-28, which affirms Mayday's speech is constitutionally protected.

30. Mayday received no further communication from the Attorney General.

### E. The Attorney General Attempts to Obtain an Injunction Against Mayday in South Dakota, But Does Not Actually Commence Any Enforcement Action

31. Disregarding Mayday's response, on December 22, 2025, the Attorney General filed a motion in South Dakota state court purporting to seek an injunction against Mayday and the company that placed Mayday's signs at gas stations in South Dakota. The motion is attached as **Exhibit G**. The Attorney General did not properly serve the motion on Mayday, and indeed did not even file or serve any complaint and summons on Mayday to commence any kind of proceeding against Mayday at all. Mayday only learned about the motion from news reports and social media posts that the Attorney General and Governor Rhoden posted linking to a press release the Attorney General issued announcing the motion. Service still has not been effected, and there is still no complaint or summons on file, so there is accordingly no actual ongoing proceeding against Mayday at the time of this filing.

32. The Attorney General's inchoate motion seeks a broad and vague injunction that (like his demand letter) refers almost entirely to third-party content Mayday's website links to—not content published by Mayday itself. The injunction seeks to require Mayday to remove existing content and links from its New York-based website, and also seeks to ban Mayday from posting signs at gas stations publicizing its website to audiences in South Dakota.

33. The asserted deceptive trade practice violations cited to support the requested injunction are not just unmerited but objectively frivolous for the reasons Mayday pointed out in

10

its response to the Attorney General's original demand. Were the Attorney General to initiate actual proceedings to pursue these claim, his claims would be barred by the First Amendment and—to the extent they sought to punish Mayday for linking to allegedly objectionable third-party websites—Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1). They would also fail as a matter of state law, since Mayday has engaged in no commercial speech regulable by the South Dakota deceptive trade practices statute.

34. In fact, even if the public health information Mayday itself publishes *were* commercial and regulable, the Attorney General could not possibly or reasonably expect to prevail in any action against Mayday because the targeted statements—(1) that third-party organizations offer abortion pills; (2) that these third-parties say they will "ship to all 50 states"; (3) that the FDA has approved the pills for shipment in all 50 states; and (4) that the FDA has approved abortion pills as safe—are all literally true. Even the Attorney General *himself* issued a press release acknowledging that federal rules permit access to abortion pills by mail. *See* Office of the South Dakota Attorney General, Attorney General Jackley Confirms SCOTUS Abortion Pill Ruling Does Not Impact State Abortion Law (June 13, 2024), https://tinyurl.com/mspmuyh6.

35. The objectively frivolous nature of the Attorney General's threatened claims against Mayday, which target Mayday's publishing operations in New York, further demonstrate that his actions have no legitimate purpose and are subjectively motivated by animus.

**F.   Mayday Self-Censors in Response to the Attorney General's Actions**

36. Mayday remains committed to its mission of providing truthful, evidence-based information to the public. But the Attorney General's actions have forced Mayday to weigh the risks and costs of defending bad faith legal actions against its desire to continue its educational efforts. Mayday seeks relief from this Court to ensure that it can continue to make its website and other informational materials available to audiences across the country.

37. Already, Mayday has unwillingly refrained from engaging in protected speech to avoid incurring future charges and legal costs defending that speech. For example, Mayday is

11

refraining from putting up additional signs at gas stations or other venues in South Dakota. It is also refraining from publishing already-produced content through its social media platforms—to audiences everywhere in the world—sourced from South Dakota residents describing their healthcare challenges. And in light of the Attorney General's actions, Mayday is more closely vetting press interview requests and self-censoring the statements it makes publicly—a significant injury for a non-profit whose very mission is to raise awareness through earned media like newspapers, radio, and television stations.

38. The Attorney General's actions have thus already censored Mayday, preventing its protected speech from reaching the people who may need it most.

## CLAIMS FOR RELIEF

### COUNT I
### Section 1983 Claim for Violation of Plaintiff's First Amendment Rights
### (Take Down Demand)

39. Plaintiff incorporates all prior paragraphs of this Complaint.

40. The First Amendment protects the publication of truthful information that does not otherwise fall within any defined category of speech excluded from protection.

41. The First Amendment bars prior restraints of constitutionally-protected speech.

42. The First Amendment bars states from punishing speech that informs audiences about opportunities to obtain abortion services from jurisdictions where those services are legal.

43. Mayday's publication of truthful statements about reproductive health resources on its website, and its efforts to publicize that website with placards at gas stations in South Dakota, is noncommercial speech fully protected by the First Amendment, as applied to the State of South Dakota under the Fourteenth Amendment.

44. The Attorney General has violated the First Amendment by seeking to force Mayday to take down its website and gas station placards without any legitimate government justification. He has done so by subjecting Mayday to illegitimate intimidation, investigation,

12

threats of prosecution, and an attempted (but defective and thus not ongoing) action for injunctive relief. He has taken these actions in response to the exercise of Mayday's First Amendment rights because of his disagreement with Mayday's viewpoint, and animus toward Mayday and its principles. The Attorney General's actions also constitute an impermissible prior restraint in violation of the First Amendment.

45. The Attorney General has, by the same conduct, violated the First Amendment by retaliating against Mayday for Mayday's exercise of its First Amendment rights: Mayday's publication of truthful information about reproductive healthcare is protected speech; the Attorney General's actions have chilled that speech and would silence a person of ordinary firmness from future First Amendment activities; and is transparently in reaction to, and motivated by, the content and viewpoints expressed by Mayday's protected activities.

46. The Attorney General's actions to censor Mayday have been undertaken in demonstrable bad faith and hostility toward Mayday and its convictions. The Attorney General has no legitimate purpose other than punishing Mayday for disseminating protected information about lawful reproductive healthcare options he finds immoral or objectionable, as evidenced by the sequence of events leading to his sham investigation and objectively meritless threats.

## COUNT II
### Section 1983 Claim for Violation of Plaintiff's First Amendment Rights
### (Threats Against Future Speech)

47. Plaintiff incorporates all prior paragraphs of this Complaint.

48. The First Amendment protects the publication of truthful information that does not otherwise fall within any defined category of speech excluded from protection.

49. The First Amendment bars prior restraints of constitutionally-protected speech.

50. The First Amendment bars states from punishing speech that informs audiences about opportunities to obtain abortion services from jurisdictions where those services are legal.

51. Mayday's publication of truthful statements about reproductive health resources on its website, and its efforts to publicize that website with placards at gas stations in South Dakota, is noncommercial speech fully protected by the First Amendment, as applied to the State of South Dakota under the Fourteenth Amendment. Mayday wishes to continue to engage in this free expression protected by the First Amendment in the future.

52. The Attorney General has violated the First Amendment by threatening to punish Mayday if it publishes truthful information about reproductive healthcare in the future, without any legitimate government justification. He has done so by threatening Mayday with future investigations and prosecutions should Mayday not desist from engaging in the protected activity the Attorney General deems objectionable. He has taken these actions in response to the exercise of Mayday's First Amendment rights because of his disagreement with Mayday's viewpoint and animus toward Mayday and its principles. The Attorney General's actions also constitute an impermissible prior restraint in violation of the First Amendment.

53. The Attorney General has, by the same conduct, violated the First Amendment by retaliating against Mayday for Mayday's exercise—and intended continued exercise—of its First Amendment rights: Mayday's publication of truthful information about reproductive healthcare is protected speech; the Attorney General's actions have chilled that speech, and would silence a person of ordinary firmness from future First Amendment activities; and is transparently in reaction to, and motivated by, the content and viewpoints expressed by Mayday's protected activities.

54. The Attorney General's actions to censor Mayday have been undertaken in demonstrable bad faith and hostility toward Mayday and its convictions. The Attorney General has no legitimate purpose other than punishing Mayday for disseminating protected information about lawful reproductive healthcare options he finds immoral or objectionable, as evidenced by the sequence of events leading to his sham investigation and objectively meritless threats.

**PRAYER FOR RELIEF**

Mayday respectfully requests that the Court:

1. Declare pursuant to Counts I-II that Defendant's expressed intent to prosecute Mayday under SDCL § 37-24 is unconstitutional retaliation because Defendant seeks to punish Mayday for publishing truthful information of public concern protected by the First Amendment on its website and in signs publicizing its website;

2. Declare pursuant to Count I that Defendant's expressed intent to force Mayday to take down its protected truthful speech on matters of public concern from its website and in signs publicizing its website is unconstitutional;

3. Declare pursuant to Count II that Defendant's expressed intent to prevent Mayday from publishing protected truthful speech on matters of public concern on its website and in signs publicizing its website in the future is unconstitutional;

4. Preliminarily and permanently enjoin Defendant and his agents, employees, and all persons acting under his direction or control, pursuant to Count I, from taking any action to prosecute, fine, or in any way penalize Mayday, including under § SDCL 37-24, for publishing truthful information of public concern on its website and in signs publicizing its website;

5. Preliminarily and permanently enjoin Defendant and his agents, employees, and all persons acting under his direction or control, pursuant to Count II, from taking any action to prosecute, fine, or in any way penalize Mayday, including under § SDCL 37-24, for publishing truthful information of public concern on its website and in signs publicizing its website;

6. Enter judgment in favor of Mayday;

7. Award Mayday costs and attorneys' fees under 42 U.S.C. § 1988; and

8. Award Mayday all other such relief as the Court deems just and proper.

Dated: January 6, 2026

Respectfully submitted,

| | |
|---|---|
| */s/        Adam S. Sieff*  <br>Adam S. Sieff | */s/        Chelsea T. Kelly*  <br>Chelsea T. Kelly |

Adam S. Sieff*
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071-3487
213.663.6800 (tel)
adamsieff@dwt.com

Ambika Kumar*
Nicole Saad Bembridge*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
206.622.3150 (tel)
ambikakumar@dwt.com
nicolesaadbembridge@dwt.com

Chelsea T. Kelly (SDNY No. CK2016)
Laura R. Handman (SDNY No. RH5353)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005-3317
202 973.4200 (tel)
laurahandman@dwt.com
chelseakelly@dwt.com

*Pro hac vice applications forthcoming

*Attorneys for Plaintiff Mayday Health*