# EXHIBIT F



**Adam S. Sieff**
adamsieff@dwt.com
213.633.8618

**Laura R. Handman**
laurahandman@dwt.com
202.973.4224

**Chelsea T. Kelly**
chelseakelly@dwt.com
202.973.4250

December 19, 2025

**VIA EMAIL**
Marty J. Jackley
South Dakota Attorney General
1302 East S.D. Highway 1889, Suite 1
Pierre, South Dakota 57501-8501
atghelp@state.sd.us

Re:   "Cease and Desist" to Mayday Medicines, Inc.

Dear Mr. Jackley:

We write regarding your December 10, 2025 letter demanding that Mayday Medicines, Inc. cease and desist "any advertising related to the delivery of abortion drugs to the State of South Dakota." Mayday objects to your misguided demand in its entirety, and will not allow government intimidation to suppress its right to publish truthful non-commercial information of public concern.

As a threshold matter, there is no jurisdiction over Mayday's website in South Dakota. Mayday is a non-profit public health education organization incorporated in Delaware and headquartered in New York that operates a globally-accessible website. Nothing in your letter suggests Mayday broke any law by displaying signs at South Dakota gas stations—nor could it, as those signs pose a question ("Pregnant? Don't want to be?") and invite readers to "learn more" by visiting Mayday's website. Instead, your letter misrepresents, and takes issue with, information you claim appears on that website.[1] But Mayday's "site merely makes information available" to anyone in the world, so its availability in South Dakota "is insufficient to confer personal jurisdiction." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010).

Nothing about Mayday's publishing activity identified in your letter, in any event, violates or is even subject to the South Dakota Deceptive Trade Practices and Consumer Protection Act (the "Act"). Mayday is a non-profit information resource. It does not sell, handle, provide, offer for sale, or benefit from the sale of abortion medication, and it has no customers. Mayday accordingly does not engage in "the sale or advertisement of any merchandise," and none of the statements at issue involve "the solicitation of contributions for charitable purposes." SDCL § 37-24-6(1). Instead, Mayday provides truthful information about healthcare options, including but not

---

[1] Your letter falsely asserts that Mayday's website "urg[es] women not to seek medical care after taking abortion pills." No such statement appears on Mayday's website. To the extent your letter takes issue with statements by Abuzz—a third-party organization—your complaint is misdirected, not to mention mischaracterized.

DWT.COM

Mr. Marty J. Jackley
December 19, 2025
Page 2

limited to mifepristone and misoprostol, which are approved by the U.S. Food and Drug Administration (FDA) for safe and effective use.[2] That information is not commercial speech subject to regulation under deceptive practices statutes, *Lowe v. SEC*, 472 U.S. 181, 210-11 & n.58 (1985), much less the more specific kinds of advertisements to which the Act applies. *See Hyde v. Franklin Am. Mortg. Co.*, 453 F. Supp. 3d 1293, 1308 (D.S.D. 2020) (Act had no application to email that "was not an advertisement and [Defendant] was not selling products"); *see also Cheval Int'l v. Smartpak Equine, LLC*, 2016 WL 1064496, at *12 (D.S.D. Mar. 15, 2016) (similar). In fact, the Act contains a safe harbor that protects "publishers, broadcasters, printers, or other persons" when, like Mayday, they do not engage in any deliberately deceptive commercial advertising. SDCL § 37-24-11.

The First Amendment imposes these limitations. States may not punish people for providing information about abortion services, even in jurisdictions that have made abortion illegal. *See Bigelow v. Virginia,* 421 U.S. 809, 815 n.5 (1975) (explaining that *Bigelow* was "a First Amendment case and not an abortion case"). *Bigelow* is controlling. The case held that a Virginia statute criminalizing the dissemination of information that allegedly "encourage[d] or prompt[ed] the procuring of an abortion" infringed a Virginia newspaper's constitutionally protected speech. *Id.* at 812. The First Amendment protected the newspaper's announcement and "editorial endorsement" of an organization that facilitated access to abortions because the content "conveyed information of potential interest and value to a diverse audience—not only to readers possibly in need of the services offered, but also to those with a general curiosity about, or genuine interest in, the subject matter." *Id.* at 822 & n.7. Virginia had no constitutionally valid "interest in shielding its citizens" from this information. *Id.* at 827-28. South Dakota likewise has no power to "regulat[e] what [South Dakotans] may hear or read" about reproductive healthcare. *Id.*

Your letter baselessly threatens Mayday's protected speech in violation of Mayday's—and its readers—First Amendment rights. But Mayday will continue to make important, and truthful, public information available. Mayday reserves all rights to supplement or amend its response.

DAVIS WRIGHT TREMAINE LLP

Adam S. Sieff
Laura R. Handman
Chelsea T. Kelly

---

[2] The FDA has repeatedly confirmed the safety of medication abortion, a conclusion supported by independent and rigorous scientific study. *See, e.g.*, F.D.A. Center for Drug Evaluation & Research, App. No. 020687Orig1s020 at 12 (March 29, 2016) (confirming the "efficacy and safety" of medication abortion based on studying more than 2.5 million U.S. uses); Mifeprex REMS Study Group, *Sixteen Years of Overregulation: Time to Unburden Mifeprex*, 376 N. ENGL. J. MED. 790, 791 (2017) (same); F.D.A., *Mifepristone U.S. Post-Marketing Adverse Events Summary Through Dec. 31, 2024* at 1 (2025) (zero fatalities "causally attributable to mifepristone" "with certainty").