# EXHIBIT G

STATE OF SOUTH DAKOTA )
                         ) SS:
COUNTY OF HUGHES )

STATE OF SOUTH DAKOTA,

        Plaintiff,

vs.

MAYDAY MEDICINES INC. d/b/a
MAYDAY HEALTH, and ALLOVER,
LLC, d/b/a MOMENTARA,

        Defendants.

IN CIRCUIT COURT

SIXTH JUDICIAL CIRCUIT

32 CIV -____

PLAINTIFF'S MOTION FOR A
PRELIMINARY AND PERMANENT
INJUNCTION PURSUANT TO SDCL 37-
24-23

COMES NOW, the above-named Plaintiff, State of South Dakota, by and through the undersigned counsel, Jacob R. Dempsey, Assistant Attorney General, and hereby moves this Court for an Order granting either a preliminary or permanent injunction, pursuant to SDCL 37-24-23, enjoining Defendants Mayday Medicines Inc., d/b/a Mayday Health (Mayday Health) and AllOver Media, LLC, d/b/a Momentara (Momentara), from engaging in the deceptive advertisement of abortion-inducing pills and abortion services.

**BACKGROUND**

At the request of the Governor of the State of South Dakota, the South Dakota Attorney General's Office commenced an investigation into advertisements appearing at multiple gas stations throughout the state that read, in prominent letters, "PREGNANT? DON'T WANT TO BE?" *See* Affidavit of Klemann; Exhibit 1. Below the main tagline of the ad was a prompt for consumers to "LEARN MORE AT MAYDAY.HEALTH." *Id.*

On December 8, 2025, Mayday Health issued a press release declaring

that it had posted "ads" at nearly thirty gas stations across the state. *See* Affidavit of Klemann; Exhibit 2. In a follow-up press release issued on December 10, 2025, Mayday Health acknowledged that only fourteen gas stations throughout the state "will have abortion pill advertisements" and that it was "putting up ads at gas stations because we think that everyone deserves access to accurate medical information[.]" *See* Affidavit of Klemann; Exhibit 2. During the press interview, Olivia Raisner (Raisner), Executive Director of Mayday Health, further stated, "[w]e just want people to have the right information so they can make informed decisions about their own bodies." *Id.* Raisner, who oversees the New York based pro-abortion corporation, said that she specifically targeted South Dakota "due to the state's strict abortion laws." *Id.*

An investigation into Mayday Health's advertisements uncovered a plethora of deceptive acts and practices, false pretense, false promises, or misrepresentations, and the concealment, suppression, or omission of material facts in connection with the advertisement of abortion-inducing pills and abortion services; the sale of abortion related merchandise; and in the solicitation of contributions for charitable purposes, in violation of SDCL 37-24-6. *See* Affidavit of Klemann. Upon these findings, the South Dakota Attorney General issued a Cease-and-Desist Letter to Mayday Health, demanding they remove the illegal advertisements by December 19, 2025. Exhibit 3. On December 19, 2025, Mayday Health issued a response refusing to remove the illegal advertisements. Exhibit 4.

2

Many of the South Dakota gas stations initially targeted for Mayday Health's advertisements voluntarily removed them upon learning what they were. *See* Affidavit of Klemann; Exhibit 2. Indeed, some business owners had refused to permit the advertisements from the outset, but their wishes were not respected, and the ads were posted at their businesses without their consent. *See* Affidavit of Klemann; Exhibit 5. At the time of this writing, illegal advertisements remain at only two locations – Schoon's Pump N' Pak, 202 Main Ave. South, Brookings, SD; and Pump N' Pak, 629 Stanford Street, Vermillion, SD. *See* Affidavit of Kollars.

The State is respectfully requesting the Court to enter either a preliminary or permanent injunction, pursuant to SDCL 37-24-23, enjoining Mayday Health and Momentara from engaging in the deceptive advertising of abortion-inducing pills and abortion services in this state. Immediate and irreparable injury, loss, or damage will result to South Dakota consumers who are misled by the deceptive advertisements. *See* Affidavit of Klemann.

The injury, loss, or damage suffered by South Dakota consumers include, but are not limited to, loss of life or injury to teenage children who were instructed by the website how to surreptitiously obtain medical or surgical abortions without their parents knowledge or consent, leaving the parents unable to monitor their teenage children for adverse reactions, side effects, hemorrhaging, or infections resulting from the abortion procedure; suggesting to women that they should keep their abortions secret and not seek follow-up medical care relating to abortion procedures for fear they might "get

3

in trouble," thereby reducing the chances that women will seek medical care for
adverse reactions, side effects, hemorrhaging, or infections; and failing to
provide South Dakota consumers with accurate information about medical and
surgical abortions, as well as the risks and side effects associated with medical
and surgical abortion procedures. *Id.*

The South Dakota Attorney General provided notice to Mayday Health of
these violations in a Cease-and-Desist letter dated December 10, 2025. Exhibit
3. Mayday Health refused to comply, resulting in the instant action. Exhibit 4.
Accordingly, no additional notice should be required.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to
Article V, Section 5, of the South Dakota State Constitution. This Court has
personal jurisdiction over the parties pursuant to SDCL 15-7-2. The proper
venue for this action is Hughes County, SD, pursuant to SDCL 37-24-25.[1]

## PARTIES

Attorney General Marty Jackley is charged with enforcing the laws of the
State of South Dakota. He is specifically authorized to bring this action in the
public interest pursuant to SDCL 37-24-23.

Mayday Health is a pro-abortion non-profit corporation organized under
the laws of Delaware and headquartered in New York, New York. Its self-
proclaimed mission is "to empower people to make their own informed

---

[1] South Dakota agrees not to seek more than $40,000 in attorney's fees and costs in the
entirety of this action.

4

decisions about their own bodies" and claims it "just want[s] people to know their options." Mayday Health advertises the availability of abortion pills "in all 50 states," which is inherently misleading, in addition to suction curettage abortion services. *See infra,* at 5-8. The corporation also solicits charitable donations from consumers and sells merchandise with a misleading statement regarding the availability of abortion pills "in all 50 states." *See* Affidavit of Klemann, Exhibit 6 and 7.

Momentara is a tech-enabled marketing company that "leverages situational context, allowing messages to more successfully influence customer choices and thinking." Momentara is a limited liability company organized under the laws of Minnesota, with its principal place of business in Minneapolis Minnesota and an operational facility in Katy, Texas.

## FACTS

Mayday Health, along with the facilitation of Momentara, launched a targeted assault of deceptive abortion advertisements on South Dakota beginning December 8, 2025. *See* Affidavit of Klemann; Exhibit 2. The advertisements direct South Dakota consumers to Mayday Health's website. When a consumer follows the prompt to visit the Mayday Health website, the large headline on the main page reads, "What do you need?" *See* Affidavit of Klemann, Exhibit 8. There are four clickable links to choose from on the main page: abortion, morning after pills, birth control, and gender-affirming care. *Id.* If the consumer selects "abortion," they are asked how long it has been since their last period. *See* Affidavit of Klemann, Exhibit 9. This screen starts a

5

decision tree that leads to the suggestion of different abortion options
depending on the woman's current length of pregnancy. This is likely because
abortions performed over twelve weeks since the consumer's last period
necessarily implicate an in-clinic physical procedure to abort the baby. *See*
U.S. Food and Drug Administration, *Information about Mifepristone for Medical
Termination of Pregnancy Through Ten Weeks Gestation,*
https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-
providers/information-about-mifepristone-medical-termination-pregnancy-
through-ten-weeks-gestation (last visited December 21, 2025); Exhibit 10.
Indeed, the U.S. Food and Drug Administration (FDA), has only approved
abortion-inducing pills for pregnant women "through ten weeks gestation." *Id.*
The in-clinic physical abortion procedure performed on women more than ten
weeks pregnant will hereinafter be referred to as a "suction curettage abortion"
or "surgical abortion." The at-home abortion procedure accomplished through
abortion-inducing pills for women that are ten weeks pregnant or less will
hereinafter be referred to as a "medical abortion."

If "more than 12 weeks" is selected since the consumer's last period from
the Mayday website, they are directed to a new website, ineedana.com, which
ostensibly means "I need an abortion." *See* Affidavit of Klemann, Exhibit 11.
Once a South Dakota consumer has disclosed on the website that they are
more than twelve weeks pregnant, they are shown a screen that reads, "Need
an Abortion? No matter what state you live in you still have options." *Id.* A
clickable link follows, that prompts the consumer to, "Search your options

6

now." *Id.* Once the link is clicked, the consumer is asked what city they live in, the first day of their last period, and their age. *See* Affidavit of Klemann, Exhibit 12. No matter what combination of information is entered into these fields (e.g. South Dakota addresses, dates of last period, and age), the consumer is always given three options: driving directions to the nearest out-of-state abortion clinic that can perform a surgical abortion, a link to "order abortion pills online" to self-induce an at-home medical abortion, and the option to fly to another state that performs surgical abortions. *See* Affidavit of Klemann, Exhibit 13.

The only exception to the options offered to consumers, regardless of the information they enter on the website, is when a consumer identifies as a minor. The minor will see the same options as all other consumers indicated above; however, they are also shown a disclaimer that says, "You are a minor. If you decide to travel for care, you may face additional barriers as a teen. Learn more in our guide for teens." *See* Affidavit of Klemann, Exhibit 14.

The deceptive information provided to children in the guide for teens, as well as the omissions of material fact, deserve further treatment here. In the guide for teens, children are advised, "[a]bortion is safe, normal, and any reason to have one is a good reason." *See* Affidavit of Klemann, Exhibit 15. The website specifically instructs children to 1) conduct their own self-induced, at-home abortions by having abortion-inducing pills sent to their home "or to a trusted friend or family member" or 2) travel to a state that does not have parental consent laws, so [the child] can consent to [their] own abortion

7

without [the child's] parents or a judges' permission." *See* Affidavit of Klemann, Exhibit 16.

Navigating back to the fork of the decision tree on Mayday Health's main website for abortion services, if "[l]ess than 12 weeks" is selected since the consumer's last period, they are directed to a screen that asks if the consumer lives in a "red state" which is detailed on a map graphic below the question. *See* Affidavit of Klemann, Exhibit 17.   South Dakota is identified as a "red state." *Id.* Once the "red state" option is selected, the consumer is directed to a page that lists five separate abortion-inducing pill providers. *See* Affidavit of Klemann, Exhibit 18. Four out of the five abortion-inducing pill providers specifically state that their company "SHIPS TO ALL 50 STATES." *Id.* At no point is there a large disclaimer at the top of the page, as there was for surgical abortions, that medical abortions are illegal in the State of South Dakota. *Compare* Exhibit 13 *with* Exhibit 18.

It is illegal to mail abortion-inducing pills into the State of South Dakota under SDCL 22-17-5.1, which provides that "any person who administers to any pregnant female or who prescribes or procures for any pregnant female any medicine, drug, or substance . . . to procure an abortion, unless there is appropriate and reasonable medical judgment that performance of an abortion is necessary to preserve the life of the pregnant female, is guilty of a Class 6 felony."

If a consumer clicks on a link for an abortion-inducing pill provider, even more deceptive information and omissions of material fact are uncovered. For

8

example, if a consumer clicks on the link for Abuzz, a consumer is told that she may perform her own at-home abortion using abortion-inducing pills if she is less than "13 weeks pregnant[,]," which is "measured from the first day of the last period." *See* Affidavit of Klemann, Exhibit 19. Or, in other words, 91 days since the first day of their last period. However, the FDA only approved the use of Mifepristone for medical abortion "through ten weeks gestation (70 days or less since the first day of a patient's last menstrual period." Exhibit 10.

When a consumer starts the process to obtain abortion-inducing pills through Abuzz, they are prompted to identify the state in which they reside. *See* Affidavit of Klemann, Exhibit 20. After South Dakota is selected, an advisement is revealed that proports to provide "information about the potential legal risks of getting abortion pills by mail" in the State of South Dakota. *See* Affidavit of Klemann, Exhibit 21. If the consumer chooses to click on the information link in the advisement (consumers are not required to view the risks of getting abortion-inducing pills by mail to continue the process), they are taken to a new website, plancpills.org. *See* Affidavit of Klemann, Exhibit 22. Once here, consumers receive more deceptive "information" on abortion issues. *Id.* For example, if a consumer navigates to the "Legal and safety considerations" portion of the website, they can click on a link stating, "Is this legal? Can someone get in trouble for using abortion pills?" *Id.* at 4. Instead of advising consumers that it is illegal to mail abortion-inducing pills into the State of South Dakota, consumers are told:

> Research shows that hundreds of thousands of people have

9

received and used pills by mail over the past few years with no legal problems.

Similarly misleading, when the question is asked "How do people get in

trouble[,]" the website advises:

- they told someone about their abortion and that person reported them.
- they got follow-up medical care and the provider reported them (many people say they are having a miscarriage to avoid this risk, which is medically what is happening in the body).
- they were later in pregnancy than they thought and didn't know what to do with the fetal tissue[.]

*See* Affidavit of Klemann, Exhibit 23.

The other abortion-inducing pill providers Mayday Health advertises make equally misleading claims regarding abortion-inducing pills and abortion services. Aid Access informs consumers that they are eligible to self-induce an at-home abortion using abortion-inducing pills in the fourteenth week of their pregnancy, and that this is "very safe." *See* Affidavit of Klemann, Exhibit 24. Again, the FDA has only approved the use of Mifepristone for medical abortion "through ten weeks gestation." Exhibit 10.

Further, the FDA has already previously issued warning letters to Aid Access for selling unapproved and misbranded abortion-inducing pills (Mifepristone and Misoprostol) over the internet. Warning Letter Issued to Aidacess.org from the United State Food and Drug Administration, Exhibit 25. However, consumers are not provided this information. Aid Access has a South Dakota specific page that in no way advises consumers that it is illegal to mail abortion-inducing pills into the State of South Dakota. *See* Affidavit of

10

Klemann, Exhibit 26. Instead, on their "legal" FAQs, the website directs consumers to declarations made by the World Health Organization, which is has no bearing on whether abortion-inducing pills are legal in the State of South Dakota. *See* Affidavit of Klemann, Exhibit 27.

Despite posting a disclaimer on their own website that they "do not give legal or medical advice," Mayday Health represents to consumers that their "information comes from top clinicians, lawyers and health experts[.]" *See* Affidavit of Klemann, Exhibit 28. Directly following this representation, Mayday Health provides links to several "trusted organizations" it has approved for legal and medical advice. *See* Affidavit of Klemann, Exhibit 29. This is further reiterated in Mayday Health's FAQs where it vouches that the links on their website "have the best content for a certain aspect of abortion care" and that they "only link to other trusted websites and partners." *See* Affidavit of Klemann, Exhibit 30.

As for the Mayday Health website itself, it contains claims that "abortion pills are safe [and] effective during the first 12 weeks" and that "[i]t is safe to do your own abortion at home with abortion pills." *See* Affidavit of Klemann, Exhibit 9. However, the FDA advises that "[i]n about 1 out of 100 women, bleeding can be so heavy that it requires a surgical procedure (surgical aspiration or D&C)." U.S. Food and Drug Administration, Labeling Information for Mifepristone, https://www.accessdata.fda.gov/drugsatfda_docs/label/2023/020687Orig1s0 25Lbl.pdf#page=16 (last visited December 21, 2025); Exhibit 31 at 16.

11

Moreover, FDA issued warnings and precautions regarding abortion-inducing

drugs include:

- Cases of serious bacterial infection, including very rare cases of
  fatal septic shock;
- Uterine bleeding occurs in almost all patients during a medical abortion:
  - Prolonged heavy bleeding may be a sign of incomplete abortion or
    other complications, and prompt medical or surgical intervention
    may be needed to prevent the development of hypovolemic shock;
  - Excessive uterine bleeding usually requires treatment by
    uterotonics, vasoconstrictor drugs, surgical uterine evacuation,
    administration of saline infusions, and/or blood transfusions.
- The drug is "available only through a restricted program . . . because of
  the risks of serious complications."

*Id.* at 5-6. Abortion-inducing drugs also have the following adverse side effects

reported by the FDA:

- Nausea
- Weakness
- Fever/Chills
- Vomiting
- Headache
- Diarrhea
- Dizziness
- Infections and infestations: post-abortal infection (including
  endometritis, endomyometritis, parametritis, pelvic infection, pelvic
  inflammatory disease, salpingitis)
- Blood and the lymphatic system disorders: anemia
- Immune system disorders: allergic reaction (including anaphylaxis,
  angioedema, hives, rash, itching)
- Psychiatric disorders: anxiety
- Cardiac disorders: tachycardia (including racing pulse, heart
  palpitations, heart pounding)
- Vascular disorders: syncope, fainting, loss of consciousness, hypotension
  (including orthostatic), light-headedness
- Respiratory, thoracic and mediastinal disorders: shortness of breath
- Gastrointestinal disorders: dyspepsia
- Musculoskeletal, connective tissue and bone disorders: back pain, leg
  pain
- Reproductive system and breast disorders: uterine rupture, ruptured
  ectopic pregnancy, hematometra, leukorrhea

12

- General disorders and administration site conditions: pain.

*Id.* at 7-8. But neither the FDA's warnings and precautions, nor the adverse effects of these drugs are contained on Mayday Health's website. A website that advertises its self-proclaimed mission is "to empower people to make their own informed decisions about their own bodies" and claims it "just want[s] people to know their options" omitted several important health advisements from the FDA.

Additional adverse events caused by abortion-inducing pills that are not contained on Mayday Health's website include:

- Ongoing Pregnancy - If the medical abortion treatment failed, there is a slight increase in the risk of birth defects such as deformities of the hands or feet and problems with the nerves of the fetus. To treat an ongoing pregnancy, you must repeat a medical or surgical abortion https://aidaccess.org/en/page/459/how-do-you-know-if-you-have-abortion-complications (last visited December 21, 2025);
- Exposure of fetuses to Misoprostol can lead to malformations, such as defects in the skull and abnormalities in the limbs (called Mobius Syndrome) https://aidaccess.org/en/page/465/what-are-the-chances-that-the-fetus-will-be-malformed-if-you-have-an (last visited December 21, 2025).

Based on these facts, it is the State's position that Mayday Health, facilitated by Momentara, has engaged in deceptive trade practices and acts in violation of SDCL 37-24-6.

## ARGUMENT

Pursuant to SDCL 37-24-23, the attorney general may bring an action for injunction for violations of the state's Deceptive Trade Practices Act if he reasonably believes it would be in the public's interest. The attorney general has determined that enjoining deceptive advertisements regarding abortion-

13

inducing pills and abortion services is in the public interest.

"Granting or denying an injunction rests in the sound discretion of the trial court." *Halls v. White*, 2006 S.D. 47, ¶ 4, 715 N.W.2d 577, 579. The Court should consider the following factors in determining whether to grant injunctive relief:

> (1) Did the party to be enjoined cause the damage? (2) Would irreparable harm result without the injunction because of lack of an adequate and complete remedy at law? (3) Is the party to be enjoined acting in bad faith or is the injury-causing behavior an innocent mistake? (4) In balancing the equities, is the hardship to be suffered by the enjoined party . . . disproportionate to the . . . benefit to be gained by the injured party?

*Duerre v. Hepler*, 2017 S.D. 8, ¶ 35, 892 N.W.2d 209, 221–22. Here, all factors weigh in favor of the granting of an injunction. First, Mayday Health and Momentara caused the damage by affirmatively engaging in the deceptive advertisement of abortion-inducing pills and abortion services. It is completely within Mayday Health's control what and where they choose to advertise. It is also completely within Momentara's control as to what advertisers they desire to accept as clients.

Second, irreparable harm will result without the injunction due to the lack of an adequate and complete remedy at law. It is the attorney general's responsibility to protect South Dakota consumers and enforce the Deceptive Trade Practice Act. Mayday Health has misrepresented to South Dakota consumers that elective abortion is legal in this state and that abortion-inducing pills can be legally mailed into the state. The attorney general cannot simply sit idle while an advertiser continues to promote illegal services within

14

the state.

Further, South Dakota consumers face immediate and dire consequences that could result from the deceptive advertisement of abortion-inducing pills and abortion services. The injury, loss, or damage suffered by South Dakota consumers include, but are not limited to, loss of life or injury to teenage children who were instructed by the Mayday advertisement how to surreptitiously obtain medical or surgical abortions without their parents knowledge or consent, leaving the parents unable to monitor their teenage children for adverse reactions, side effects, hemorrhaging, or infections resulting from the abortion procedure; Mayday's advertisement suggesting to women that they should keep their abortions secret and not seek follow-up medical care relating to abortion procedures for fear they might "get in trouble," thereby reducing the chances that women will seek medical care for adverse reactions, side effects, hemorrhaging, or infections; and Maydays failure to provide South Dakota consumers with accurate information about medical and surgical abortions, as well as the risks and side effects associated with medical and surgical abortion procedures.

Third, Mayday Health has acted in bad faith. In a press statement Raisner, the Executive Director of Mayday Health, admitted that she specifically targeted South Dakota "due to the state's strict abortion laws." She knew that abortion-inducing pills and abortion services were illegal in South Dakota when she began running advertisements for them, and she was put on notice through the Cease and Desist letter issued by the attorney general. Yet

in a perplexing response to the letter, Mayday Health refused to stop running

the illegal ads and claimed protection of the safe harbor provision, which

provides:

> Nothing in this chapter shall apply to publishers, broadcasters,
> printers, or other persons in so far as an unlawful act or practice
> as defined in § 37-24-6 involves information that has been
> disseminated or reproduced on behalf of others *without knowledge*
> *that it is an unlawful act or practice.*

SDCL 37-24-11 (emphasis added). Mayday Health not only knew that their

actions were illegal in the State of South Dakota, they specifically sought out

advertising here for that very reason. Mayday Health does not have clean

hands.

Finally, in a balancing the equities, the hardship suffered by Mayday

Health is not disproportionate to the benefit gained by South Dakota

consumers with the grant of the injunction. Mayday Health has alleged that

this is an issue of free speech. However, it has long been the rule that "there

can be no constitutional objection to the suppression of commercial messages

that do not accurately inform the public about lawful activity." *Cent. Hudson*

*Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563, 100 S.

Ct. 2343, 2350, 65 L. Ed. 2d 341 (1980). Indeed, the state "may ban forms of

communication more likely to deceive the public than to inform it, or

commercial speech related to illegal activity." *Id.* at 564. Mayday Health's

advertisements check both of those unprotected boxes.

The advertisements are deceptive in that they 1) claim medical abortion

is safe, yet link to several websites that provide abortion-inducing pills well

16

beyond the FDA recommended timeframe; 2) instruct children how to obtain abortion inducing pills without warning them that the pills are illegal in this state; 3) instruct children how to leave the state and obtain an abortion without their parent's knowledge or consent; 4) inform children that abortions are "safe, normal, and any reason to have one is a good reason" without warning of any of the risks associated with abortion procedures; 5) suggest to women that they should keep their abortions secret and not seek follow-up medical care relating to abortion procedures for fear they might "get in trouble," thereby reducing the chances that women will seek medical care for adverse reactions, side effects, hemorrhaging, or infections; 6) completely omit any of the FDA's warnings and precautions and adverse effects from their advertisement, while claiming that "abortion pills are safe [and] effective" and that "[i]t is safe to do your own abortion at home with abortion pills."

More importantly, the abortion-inducing pills and abortion services Mayday health is advertising in South Dakota is illegal in this state. Yet their ads and the merchandise they sell indicates that consumers "can still get abortion pills in all 50 states."

On the other hand, the benefit to be gained by the State and South Dakota consumers is boundless. Halting the deceptive advertisements protects South Dakota consumers from any potential injury or death that may result from the misleading information. For example, a teenage child could be saved who may have otherwise followed Mayday Health's instructions and surreptitiously perform an at-home medical abortion without informing their

17

parents and then dies of septic shock because their parents were not aware of the abortion-inducing drugs their child had ingested. The same goes for the woman encouraged not to seek follow-up medical care for fear of "getting in trouble" according to the advice given by Mayday Health's "trusted websites and partners." And finally, it benefits the state to simply shut down bad actors who are knowingly advertising illegal services.

Mayday Health's advertisements are not protected speech. They do not accurately inform the public of a lawful activity, and for the most part, they promote illegal activity within the state.

## CONCLUSION

The Plaintiff respectfully requests that this Court enter an Order granting its Motion for a Preliminary or Permanent Injunction. Mayday Health intentionally inserted itself into the state to cause this damage, the damage cannot be remedied without the injunction because the deceptive advertisements have created a health and safety risk to South Dakota consumers, Mayday Health acted in bad faith by inserting itself into the state and advertising abortion-inducing pills and abortion service that it knew to be illegal along with other misinformation, and in balancing the equities, the hardship suffered by Mayday Health is slight compared to the benefit gained by the state and south Dakota consumers. Mayday Health's advertisements are not protected speech, and they create a public safety and health risk to South Dakota consumers.

Dated this 22nd day of December, 2025.

18

*/s/ Jacob R. Dempsey*

Jacob R. Dempsey
Assistant Attorney General
1302 E. S.D. Highway 1889, Suite #1
Pierre, South Dakota 57501
Telephone: (605) 773-3215
Email: jacob.dempsey@state.sd.us

19