UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAYDAY HEALTH,<br><br>  Plaintiff,<br><br>  v.<br><br>MARTY J. JACKLEY, Attorney General of South Dakota, in his official capacity,<br><br>  Defendants. | Case No. 1:26-cv-00078-KPF |

**DECLARATION OF LIV RAISNER IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

I, Liv Raisner, declare as follows:

1. I am the Founder and Executive Director of Mayday Health ("Mayday"), a reproductive health education nonprofit. I co-founded Mayday in May 2022 in the wake of the U.S. Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization,* 597 U.S. 215 (2022)—responding to the widespread confusion, fear, and misinformation that followed the elimination of the federal constitutional right to abortion, particularly regarding the safety, legality, and availability of abortion pills. As Executive Director, I am responsible for setting Mayday's strategic vision, overseeing our day-to-day operations, and supervising content development and press outreach. I make this declaration from personal knowledge and could competently attest to all facts in this declaration.

   *Mayday's Mission and Website*

2. Mayday's mission is to share accurate information about abortion pills, birth control, and gender-affirming care in any state, and empower people to make their own informed decisions

about their own bodies. To this end, we own and operate a globally accessible website (https://mayday.health) that publishes truthful information about reproductive healthcare, including the safe and effective use of FDA-approved abortion pills such as mifepristone and misoprostol.

3. The front page of our website asks the visitor what category of information they are interested in: abortion, morning-after pills, birth control, or gender-affirming care. For each category, it then provides a series of links to third-party organizations that may provide access to such medical care or other resources. *See id.* For the abortion category, Mayday provides links to well-established third-party websites including Aid Access, Cambridge Reproductive Health Consultants, A Safe Choice, Abuzz, and We Take Care of Us. *See id.* Mayday also links to organizations offering supporting services, including the Digital Defense Fund's privacy guide, the Miscarriage and Abortion Hotline, and the If/When/How Repro Legal Helpline. *See id.*

4. Much of the information that Mayday's website links to is from clinicians, legal organizations, and health experts. We independently research that information to ensure our resources are accurate. If medically appropriate, some of these third-parties may choose to prescribe and provide access to abortion pills, such as mifepristone and misoprostol.

5. To raise awareness about the availability of reproductive health services to communities across the country, we publicize our website through social media platforms like TikTok and Instagram, as well as through billboards, plane-pulled banners, art installations, apparel, and other tangible media. Mayday itself does not sell, handle, provide, offer for sale, or distribute any medications. It also does not provide any medical or legal advice, charge any fee, collect any revenue related to the provision of medical or legal services, or obtain any other

valuable consideration in exchange for disseminating its message. It does not benefit from the sale of abortion medication, and has no customers. Nor does it monetize its users' data.

6. Rather, Mayday is a donor-funded information clearinghouse—an educational resource with links to third-party websites—that provides people with the information they need to make informed reproductive healthcare choices, including (if they want) to terminate pregnancies lawfully and safely despite residing in places that have burdened or outlawed abortion. This information is provided as free of charge to users—as an expression of Mayday's values and beliefs. We believe this work is essential to ensuring that individuals, regardless of their location, can make informed decisions about their health and well-being.

*Mayday's Signs in South Dakota and the State's Response*

7. To this end, on December 8, 2025, we placed signs at gas stations around South Dakota. The signs read: "Pregnant? Don't want to be?" with a prompt for consumers to "Learn more" by visiting Mayday's website, as shown below.



8. The next day, December 9, 2025, South Dakota Governor Larry Rhoden issued a press release announcing he was urging South Dakota Attorney General Marty Jackley to investigate Mayday.

9. The Attorney General then commenced an investigation into us for possible violations of the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-6.

10. On December 10, 2025, the Attorney General sent us a letter to an address in New York (as well as by e-mail) demanding that we immediately desist from publishing information that could be used to facilitate "the delivery of abortion drugs to the State of South Dakota." Failure to comply, he threatened, exposed us to "felony criminal consequences or civil penalties up to $5,000 per violation."

11. The Attorney General's letter falsely accuses us of "urging women not to seek medical care after taking abortion pills" and claims, among other things, that Mayday had engaged in "deceptive act[s] or practice[s]" by republishing official FDA and other medical findings that abortion pills are safe and effective. But beyond that, the Attorney General's allegations refer almost entirely to information published by and on linked third-party websites, not by Mayday.

12. Mayday responded on December 19, 2025. Objecting to the Attorney General's demand in its entirety, we explained that we are non-profit information resource that does not sell, handle, provide, offer for sale, or benefit from the sale of abortion medication, and are accordingly not subject to South Dakota deceptive trade practices law.

13. We also made clear in the letter that our publications and resources are truthful, constitutionally protected speech on a matter of public concern, and thus, any legal action against us on the basis of that speech cannot be sustained under the First Amendment.

14. Mayday received no further communication from the Attorney General.

15. On December 22, 2025, we learned from news reports and social media posts that the Attorney General filed a motion in South Dakota state court purporting to seek an injunction against us and against the company that placed our signs at gas stations in South Dakota.

16. As of the time of this filing, Mayday has not received a copy of this motion at its current address.

17. The Attorney General's motion seeks to require us to remove existing content and links from our New York-based website, and also seeks to ban us from posting signs at gas stations publicizing our website to audiences in South Dakota.

### *The Repercussions of the State's Action on Mayday's Speech*

18. Mayday remains committed to our mission of providing truthful, evidence-based information to the public. But the Attorney General's actions have forced us to weigh the risks and costs of defending bad faith legal actions against that commitment.

19. We have already refrained from publishing resources to avoid prosecution and legal fees. While we would like to publish more information into South Dakota in future, our plans are on hold in light of the Attorney General's threats. We are also refraining from publishing content on social media featuring South Dakota residents describing their healthcare challenges. These shuttered posts would have reached audiences around the world.

20. Mayday is also more closely vetting press requests, and our leadership, including myself, is now limiting and second-guessing the tone and content of statements we make on behalf of Mayday, lest our speech—though protected—cause some controversy that exposes us to litigation. This is a significant injury for a non-profit like us whose mission is to raise awareness through earned media like newspapers, radio, and television stations.

21. In short, the threat that the South Dakota Attorney General will eventually file an actual legal action against Mayday—with threatened penalties including "felony criminal consequences or civil penalties up to $5,000 per violation"—has forced us to restrict our publication activities and will continue to affect how, where, and what we say in the future unless this court enters an order preventing the Attorney General from taking actions that would pressure or force us to restrict our speech. Without relief, Mayday will continue to be restricted from reaching the people who we believe need the information we publish the most.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       January 14, 2026

By: _____
    Liv Raisner