UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAYDAY HEALTH,<br><br>                     Plaintiff,<br><br>    v.<br><br>MARTY J. JACKLEY, Attorney General of South Dakota, in his official capacity,<br><br>                     Defendant. | Case No. 1:26-cv-00078-KPF |

**PLAINTIFF MAYDAY HEALTH'S REPLY IN SUPPORT OF**
<u>**MOTION FOR PRELIMINARY INJUNCTION**</u>

## TABLE OF CONTENTS

                                                                                                         **Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

I.      Mayday Is Likely to Prevail on Its First Amendment Claims. ............................ 1

          A.      The First Amendment Protects Mayday's Speech. .................................... 1

                  1.      Mayday publishes true non-commercial information. ............................... 2

                  2.      Mayday's speech does not solicit or abet illegal acts. ............................... 3

          B.      Defendant Fails to Justify His Conduct Under Any Constitutional Standard. ........ 5

          C.      The Court Has Power to Stop Defendant's Unconstitutional Acts ........................ 5

                  1.      The Court has personal jurisdiction over Defendant. ............................... 5

                        a.      The Court has specific personal jurisdiction under § 302(a)(3)…........6

                        b.      Exercising jurisdiction comports with due process…………………7

                  2.      *Younger* does not shield Defendant. ............................................................ 7

II.     Mayday Will Suffer Irreparable Harm Absent an Injunction. ........................... 11

III.    Mayday Satisfies the Remaining Preliminary Injunction Factors. .................. 11

CONCLUSION ................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023) ............................................................................................................2

*Ashcroft v. Free Speech Coalition*,
    535 U.S. 234 (2002) .........................................................................................................4, 5

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) (Mot. 8) ............................................................................................1

*Bigelow v. Virginia*,
    421 U.S. 809 (1975) .........................................................................................................4, 5

*Board of Trustees of SUNY v. Fox*,
    492 U.S. 469 (1989) ............................................................................................................3

*Brooklyn Institute of Arts & Sciences v. City of New York*,
    64 F. Supp. 2d 184 (E.D.N.Y. 1999) .........................................................................8, 9, 10

*Calder v. Jones*,
    465 U.S. 783 (1984) ............................................................................................................7

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) ................................................................................................7

*Cocroft v. Graham*,
    122 F.4th 176 (5th Cir. 2024) .............................................................................................5

*Conant v. Walters*,
    309 F.3d 629 (9th Cir. 2002) ..............................................................................................4

*Cullen v. Fliegner*,
    18 F.3d 96 (2d Cir. 1994) .....................................................................................8, 10, 11

*Defense Distributed v. Grewal*,
    971 F.3d 486 (5th Cir. 2020) ..............................................................................................7

*Diamond "D" Const. Corp. v. McGowan*,
    282 F.3d 191 (2d Cir. 2002) ................................................................................................8

*DiStefano v. Carozzi N. Am., Inc.*,
    286 F.3d 81 (2d Cir. 2001) ..................................................................................................6

*Dow Jones & Co., Inc. v. Perplexity AI, Inc.*,
   797 F. Supp. 3d 305 (S.D.N.Y. 2025)......................................................................................6

*First Resort, Inc. v. Herrera*,
   860 F.3d 1263 (9th Cir. 2017) ............................................................................................2, 3

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013)..................................................................................................7

*Llewelyn v. Oakland Cnty. Prosecutor's Off.*,
   402 F. Supp. 1379 (E.D. Mich. 1975)..................................................................................10

*Media Matters for Am. v. Paxton*,
   138 F.4th 563 (D.C. Cir. 2025)..............................................................................................7

*Morrison v. Olson*,
   487 U.S. 654 (1988)...............................................................................................................9

*N.Y. Times Co. v. United States*,
   403 U.S. 713 (1971)...............................................................................................................5

*NAACP v. Button*,
   371 U.S. 415 (1963)...............................................................................................................3

*NIFLA v. James*,
   160 F.4th 360 (2d Cir. 2025) .......................................................................................2, 3, 4, 5

*Nobby Lobby, Inc. v. City of Dallas*,
   767 F. Supp. 801 (N.D. Tex. 1991) .......................................................................................9

*NOPSI v. Council of City of New Orleans*,
   491 U.S. 350 (1989)...............................................................................................................7

*Show-World Ctr., Inc. v. Walsh*,
   438 F. Supp. 642 (S.D.N.Y. 1977) ........................................................................................9

*Simopoulos v. Virginia Board of Medicine*,
   644 F.2d 321 (4th Cir. 1981) .........................................................................................10, 11

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69 (2013).................................................................................................................7

*Twitter, Inc. v. Paxton*,
   2021 WL 1893140 (N.D. Cal. May 11, 2021).......................................................................7

*United States v. Al-Timimi*,
   --- F.4th ----, 2026 WL 71062 (4th Cir. 2026).......................................................................4

iii

*United States v. Hansen*,
    599 U.S. 762 (2023) ........................................................................................................3

*United States v. Stevens*,
    559 U.S. 460 (2010) ........................................................................................................3

*United States v. Williams*,
    553 U.S. 285 (2008) .....................................................................................................3, 4

*Word of Faith World Outreach Center Church, Inc. v. Morales*,
    787 F. Supp. 689 (W.D. Tex. 1992), *rev'd on other grounds*, 986 F.2d 962 (5th Cir. 1993) ...9

*Younger v. Harris*,
    401 U.S. 37 (1971) ............................................................................................1, 7, 8, 10

*Zhang v. Baidu.com Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) ...............................................................................5

**State Cases**

*Ingraham v. Carroll*,
    90 N.Y.2d 592 (1997) .....................................................................................................6

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    16 N.Y.3d 295 (2011) .....................................................................................................6

**State Statutes**

SDCL § 15-2-30 ........................................................................................................................8

SDCL § 37-24-6(1) ...................................................................................................................9

SDCL § 37-24-23 ......................................................................................................................7

**Rules**

CPLR § 302(a)(3) .....................................................................................................................6

**Constitutional Provisions**

U.S. Const. amend. I ....................................................................................................... *passim*

# INTRODUCTION

Defendant makes no attempt to conceal his disdain for Mayday and cannot satisfy the constitutional scrutiny that applies to his actions. Instead, his defense rests on the premise that the First Amendment does not constrain him, and that even if it did, this Court is powerless to stop him. He is wrong. The truthful information Mayday publishes is neither commercial nor illegal, so the First Amendment bars Defendant from retaliating against Mayday because of hostility toward Mayday, the information it publishes, and its views. Nor does *Younger v. Harris*, 401 U.S. 37 (1971) shield Defendant's misconduct from federal judicial review. Even assuming Defendant had commenced a qualifying enforcement proceeding, *Younger* is an extraordinary exception to federal jurisdiction based on comity. As the Second Circuit has held, its rationale does not insulate illegitimate proceedings brought to punish the disfavored exercise of constitutional rights.

Because this Court has personal jurisdiction over Defendant, and because Mayday will indisputably suffer irreparable injuries absent relief, the Court should enter an injunction.

# ARGUMENT

**I.     Mayday Is Likely to Prevail on Its First Amendment Claims.**

  **A.     The First Amendment Protects Mayday's Speech.**

The First Amendment undisputedly bars Defendant from punishing publication of truthful information of public concern. *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (Mot. 8). Defendant argues he may nevertheless prosecute Mayday because its speech is commercial and false, and/or encourages illegal activity. MOL 2-5; YB 15-20.[1] Neither argument has merit.

---

[1] Defendant filed two briefs in opposition to Mayday's preliminary injunction motion (ECF Nos. 35-36), plus a letter brief (ECF No. 33) arguing this Court lacks personal jurisdiction. Mayday refers to ECF No. 33 as "LB," ECF No. 35 as "YB," and ECF No. 36 as "MOL."

1

1.      **Mayday publishes true non-commercial information.**

Mayday publishes accurate information about reproductive healthcare, including by describing the amount third-party providers charge for abortion pills, as well as those providers' location and the time they predict prescribed medication could arrive. Mot. 8. Mayday undisputedly provides no medical service and receives no payment for publishing any information. *See* Raisner Decl. ¶5; YB 4-10, 18. It does so (again, undisputedly) because of its convictions. Raisner Decl. ¶6. Those concessions are dispositive. The Second Circuit applied these criteria in *NIFLA v. James*, 160 F.4th 360, 377-76 (2d Cir. 2025), to hold that mirror-image speech by abortion opponents was protected noncommercial speech. Mot. 9-10.

Defendant claims Mayday is different because it, unlike the plaintiff in *NIFLA*, "fundraises off its message." YB 17-18; MOL 3. That is false. Just as Mayday raises money to fund its speech, the *NIFLA* plaintiffs solicited donations and sold apparel to fund their messaging "for post abortive women." Kelly Decl. Exs. G(B), H at 1, I. Just as a painting is not commercial speech merely because it is sold, neither is Mayday's nor NIFLA's speech. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 594, 600 (2023). If Defendant were right, every donor-funded organization's newsletter would be commercial speech subject to regulation. "Expanding commercial speech" this way "would push the commercial speech doctrine far beyond its 'core'" and thwart "the efficient exchange of information." *NIFLA*, 160 F.4th at 376 (cleaned up).

None of Defendant's other arguments changes the analysis. It matters not that Mayday reports providers' stated "terms of sale such as price quotes and product delivery times." YB 19. Dissemination of product information by third-party researchers is noncommercial. Mot. 10-11 (citing *Bose Corp. v. Consumers Union*, 466 U.S. 485, 503-14 (1984)). *First Resort, Inc. v. Herrera*, 860 F.3d 1263 (9th Cir. 2017) (MOL 4), holds only that advertising a service a speaker *itself provides* is commercial speech, even if the speaker provides the service for free and earns

derivative revenue. *Id.* at 1273. It has no application here because Mayday undisputedly provides no services. *Board of Trustees of SUNY v. Fox*, 492 U.S. 469 (1989) (MOL 3) supports Mayday, too. There, intermediate scrutiny applied to restrictions on mixed speech with predominantly commercial elements—***selling products*** at events in addition to speaking. *Id.* at 473-74. Here, there are no "commercial" elements: Mayday's solicitation of donations is non-commercial speech, *id.* at 473, as is the healthcare information it publishes, *NIFLA*, 160 F.4th at 375-76.

### 2.     Mayday's speech does not solicit or abet illegal acts.

Defendant claims authority to punish Mayday because it publishes information he believes could encourage someone to solicit someone else to violate South Dakota law at some point. YB 15-16; MOL 4-5. That argument fails. Although the First Amendment does not protect speech "integral to criminal conduct," *United States v. Stevens*, 559 U.S. 460, 468 (2010), it provides breathing room for the attenuated encouragement Defendant describes.[2] *See United States v. Williams*, 553 U.S. 285, 298-300 (2008) ("abstract advocacy of illegality" is protected). To be clear, Mayday does not even abstractly advocate for illegality: it seeks to destigmatize abortion and provide information for readers to make their own choices, not to encourage any specific reader to make any particular choice. Sieff Decl. Ex. 13-14; Raisner Decl. ¶¶5-6. But even if Mayday's speech were encouragement, it would not be illegal: Mayday does not help any person specifically intending "to bring about a particular unlawful act." *United States v. Hansen*, 599 U.S. 762, 771 (2023).

---

[2] It is not clear what statements Defendant even claims to be targeting. *Cf. NAACP v. Button*, 371 U.S. 415, 438 (1963) ("[p]recision of regulation" required to restrict speech). Defendant appears to target (1) links Mayday provides to third-party medical providers, (2) statements on *those* websites, and (3) statements on Mayday's website seeking to destigmatize abortion ("any reason is normal") and accurately empower readers to know they have options if they want ("you still have a choice" "no matter where you live" "in all 50 states").

The Supreme Court rejected a similar argument in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), where the government tried banning speech it claimed promoted child pornography. "The government may not prohibit speech because it increases the chance an unlawful act will be committed 'at some indefinite future time,'" the Court explained, even if it has the "tendency" "to encourage unlawful acts." *Id.* at 253. Speech may not be restricted where there is only "a remote connection … that might encourage thoughts" to solicit a crime. *Id.* The statement, "I encourage you to obtain child pornography," is thus protected. *Williams*, 553 U.S. at 300. And just this month, the Fourth Circuit applied these principles to protect actual exhortations to particular individuals to commit terrorism—including instructions about where and how to obtain training. *See United States v. Al-Timimi*, --- F.4th ----, 2026 WL 71062, at \*12-13 (4th Cir. 2026). Mayday's speech—even if "encouragement"—is even more clearly protected.

The Ninth Circuit's decision in *Conant v. Walters*, 309 F.3d 629, 632, 635-36 (9th Cir. 2002) is instructive. The First Amendment there protected a medical doctor's "recommendation to obtain marijuana in violation of federal law," rejecting arguments that such recommendations were integral to criminal conduct. *Id.* at 635-36. "[W]hatever conduct the doctor could anticipate a patient *might* engage in," the court concluded, "is simply beyond the scope of either conspiracy or aiding and abetting." *Id.* at 636. So, too, here. And just as there are lawful reasons for a marijuana recommendation like advocacy or lawful procurement in a different state, *id.* at 634-35, Mayday's speech invites similar lawful choices—like crossing state lines for an abortion, going to an out-of-state pharmacy, having pills sent to Minnesota, or choosing *not* to have an abortion.

Defendant argues *Bigelow v. Virginia*, 421 U.S. 809 (1975) and *NIFLA*, 160 F.4th at 375-76, are also distinguishable because the information in those cases concerned lawful medical procedures. MOL 4, YB 16-17. In fact, the government there argued the procedure at issue "has

4

never been FDA approved" for lawful administration. Compl., *State v. Heartbeat Int'l, Inc.*, No. 451314/2024, Dkt. 1 ¶¶ 8, 11-13 (Sup. Ct. N.Y. Cty. May 6, 2024). Defendant also disregards the *lawful* actions one can take with the information Mayday publishes, and the fact Mayday's speech "convey[s] information of potential interest" to anyone "with a general curiosity about" the subject. *Bigelow*, 421 U.S. at 822 & n.7, 827-28. Defendant has no response to recent cases applying *Bigelow* to protect speech conveying this kind of information. Mot. 9-10. His other authorities, like *Cocroft v. Graham*, 122 F.4th 176, 182 (5th Cir. 2024), are distinguishable because they involve laws prohibiting proposals to sell contraband only where it is prohibited, not information with lawful purposes.

At bottom, Defendant's theory that he may punish speakers who provide information "in the abortion pill procurement chain," YB 7, is dangerous and unlawful. *See Ashcroft*, 535 U.S. at 253 (rejecting such attenuated liability). He can no more prosecute Mayday for providing information about abortion pills than he could prosecute Google for publishing that information in search results, *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 428-40 (S.D.N.Y. 2014) (First Amendment protects search-result rankings), or the New York Times for reporting it, *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (protecting reporting usable to commit illegal acts).

**B.   Defendant Fails to Justify His Conduct Under Any Constitutional Standard.**

Defendant fails to show his actions satisfy the First Amendment. Because it was his burden to do so under any level of scrutiny, *NIFLA*, 160 F.4th at 378, concluding that Mayday's speech is protected establishes its likelihood to prevail on its claims. *See* Mot. 13-17 (demonstrating Defendant could not satisfy scrutiny regardless).

**C.   The Court Has Power to Stop Defendant's Unconstitutional Acts**

**1.   The Court has personal jurisdiction over Defendant.**

Although Defendant makes a passing reference to personal jurisdiction (MOL 1), he does

5

not brief it—apparently relying on his pre-motion letter. The Court has jurisdiction for the reasons Mayday explains in its letter-response, ECF No. 37, summarized here.

### a. The Court has specific personal jurisdiction under § 302(a)(3)

Under CPLR § 302(a)(3), New York courts have jurisdiction over parties whose tortious acts outside the state cause injury within it. Mayday satisfies all five elements needed to invoke CPLR § 302(a)(3): (1) Defendant committed constitutional torts outside New York, (2) Mayday's claims arise from those torts, (3) the torts injured Mayday in New York, (4) Defendant "expected or should reasonably have expected" his tortious actions "to have consequences in New York," and (5) South Dakota "derive[s] substantial revenue from interstate ... commerce." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011).

On the first two elements, Defendant retaliated against Mayday's First Amendment-protected speech by sending a cease-and-desist letter from South Dakota to New York and attempting retaliatory litigation in South Dakota state court. Mayday's claims arise from both acts. On the third element, the "situs of injury" is New York because Mayday felt "the first effect" of Defendant's retaliatory actions here, in the form of an immediate chill on its speech. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 83-85 (2d Cir. 2001); Raisner Decl. ¶¶19-20. On the fourth element, Defendant should have expected Mayday to suffer injuries in New York, since his aim was to restrict speech disseminated from Mayday's New York headquarters. *See Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 329-30 (S.D.N.Y. 2025) (Failla, J.) (third and fourth elements satisfied where defendant's conduct predictably chilled plaintiff's "incentive to publish or write" from New York). On the fifth element, South Dakota derives tens of millions of dollars in revenue from interstate commerce. *See* ECF No. 37 at 2; Kelly Decl. Ex. E. That means the state is "economically big enough" to be the type of defendant that § 302(a)(3) was intended to reach. *Ingraham v. Carroll*, 90 N.Y.2d 592, 599 (1997).

### b.     Exercising jurisdiction comports with due process

Defendant's efforts to stifle Mayday from disseminating speech from New York to audiences in New York, South Dakota, and around the country establish constitutionally-sufficient minimum contacts. His actions satisfy both the purposeful-availment standard and the standard under *Calder v. Jones*, 465 U.S. 783, 789 (1984). *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170-71 (2d Cir. 2010) (purposeful availment); *Media Matters for Am. v. Paxton*, 138 F.4th 563, 576-77 (D.C. Cir. 2025) (*Calder*); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170-73 (2d Cir. 2013) (*Calder*). Asserting jurisdiction over Defendant is fair and reasonable. *See Chloe*, 616 F.3d at 164 (listing factors); *see also* ECF No. 37 (analysis of factors as applied here). The decisions in *Media Matters*, 138 F.4th at 576, *Defense Distributed v. Grewal*, 971 F.3d 486, 491-92 (5th Cir. 2020), and *Twitter, Inc. v. Paxton*, 2021 WL 1893140, at *2 (N.D. Cal. May 11, 2021)—cited in the Court's oral TRO ruling—underscore that exercising jurisdiction here is sound. Defendant's attempts to distinguish each case only highlights their similarity and the persuasive value of their holdings. *See* ECF No. 37 at 3.

### 2.     *Younger* does not shield Defendant.

*Younger* presents an extraordinary and narrow exception—satisfied only in "exceptional circumstances"—to the rule that federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *NOPSI v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989). Before a federal court may invoke *Younger*, there must be an (1) ongoing criminal or quasi-criminal enforcement action that (2) implicates an important state interest and (3) allows litigants to raise federal issues. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81-82 (2013).[3] Even then, abstention is *inappropriate* when a state enforcement

---

[3] Mayday contests the existence of an ongoing action under SDCL § 37-24-23. An "action" is not

action is "brought to retaliate for or to deter constitutionally protected conduct." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994). This is because *Younger* is a comity-based doctrine that defers to a state's legitimate pursuits. Because state officials "cannot have a legitimate interest" in a retaliatory proceeding "calculated to chill First Amendment expressive activity," permitting such proceedings does not serve *Younger*'s purposes. *Id.* at 104.

Thus in *Cullen*, the Second Circuit refused to abstain when "ad hominem" disciplinary proceedings were brought against a teacher at least partially motivated by animosity and a desire to suppress his political speech. *Id.* Likewise, in *Brooklyn Institute of Arts & Sciences v. City of New York*, 64 F. Supp. 2d 184, 195-96 & 195 n.1 (E.D.N.Y. 1999), Judge Gershon refused to abstain from a speech retaliation action challenging enforcement proceedings "conceived and initiated as an instrument to pressure" a museum into "remov[ing] specific objectionable works." What matters is "the subjective motivation of the state authority in bringing the proceeding." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002). When a state proceeding is "initiated with and is animated by a retaliatory, harassing, or other illegitimate motive," *Younger* has no application. *Id.*

These principles preclude abstention here.

***Initiated to retaliate.*** Defendant undisputedly threatened state enforcement after South Dakota Governor Rhoden directed him to pursue Mayday under South Dakota's "pro-life laws" for spreading information that "appears to conflict with South Dakota's proud pro-life stance." Sieff Decl. Exs. 5-6. As the Court previously found, this reflects "an existing content-based bias against Mayday's speech before any investigation was even conducted." Kelly Decl., Ex. J at

---

"commenced" in South Dakota without a summons. SDCL § 15-2-30. Defendant has moved for an injunction, but not filed or served any summons (or complaint). It ultimately makes no difference, however, since the retaliation exception applies even if there *were* an ongoing action.

8

15:10-17.  It is similar to Mayor Giuliani directing his office to manufacture claims in *Brooklyn Institute* after learning about an exhibition he considered "an attack on religion."  64 F. Supp. 2d at 186.  Here too, state executives "stated from the beginning" their bias against Mayday's speech, "and then sought to find a basis in the pertinent legal instruments" to justify shutting it down.  *Id.* at 196; *see also Show-World Ctr., Inc. v. Walsh*, 438 F. Supp. 642, 646, 650 (S.D.N.Y. 1977) (refusing to abstain when the "sequence of events leading up" to enforcement action showed "one of the aims" was censorship).  As Mayday described (Mot. 14-17), this is textbook retaliation.  *See Morrison v. Olson*, 487 U.S. 654, 728 (1988) (Scalia, J., dissenting).

    ***Pursued despite futility.***  Defendant knows Mayday is a non-profit that has no customers and does not sell, handle, provide, offer, or benefit financially from the sale of abortion medication.  Sieff Decl. Ex. 9.  He nevertheless elected to pursue Mayday under a statute that prohibits fraud in connection with the sale or advertisement of merchandise.  *See* SDCL § 37-24-6(1).  And he did so only because he could not bring claims against Mayday under the state's "pro-life laws."  Sieff Decl. Ex. 6.  Federal courts facing similar shifting and meritless enforcement claims have refused to abstain.  *See, e.g.*, *Word of Faith World Outreach Center Church, Inc. v. Morales*, 787 F. Supp. 689, 694-95, 696 (W.D. Tex. 1992) (improper retaliatory motive evidenced by meritless deceptive trade action against church "not engaged in trade or commerce" to whom relevant statute "has no applicability"), *rev'd on other grounds*, 986 F.2d 962, 967 (5th Cir. 1993); *Nobby Lobby, Inc. v. City of Dallas*, 767 F. Supp. 801, 808 (N.D. Tex. 1991) (refusing to abstain where shifting theories showed intent to censor).

    ***Continued bad faith.***  Defendant's conduct in this litigation confirms his actions are motivated by animus and an intent to harass.  Following the TRO, Defendant told Mayday's counsel that the TRO did not prevent him from pursuing the state court proceedings the Court had

9

just enjoined. Kelly Decl. ¶3. He claimed the TRO only applied to Mayday's "truthful" speech, not speech he deemed unprotected. *Id.* He also stated that a ruling from this Court would not necessarily prevent him from pursuing an action in a South Dakota court, which would decide its jurisdiction and could reconsider incorrect findings and conclusions from this Court. *Id*. This recalcitrance indicates bad faith. *See, e.g.*, *Llewelyn v. Oakland Cnty. Prosecutor's Off.*, 402 F. Supp. 1379, 1388 (E.D. Mich. 1975) (refusing abstention following selective interpretation and defiance of court orders). Finally, the brief that Defendant signed contains an unusual concluding section ridiculing Mayday's activism. *See* YB 21-23 (mocking Mayday for "defiantly thrusting its emoji first skyward, tossing digital Molotov cocktails … and running online cells"). Though normally not worth comment, the passage suggests the "ad hominem" motivation described in *Cullen*, 18 F.3d at 103-04.

  Defendant's submissions do not mention *Cullen* or *Brooklyn Institute* despite the Court's reliance on those cases in its TRO order. Nor does Defendant address the Second Circuit's *Younger* retaliation standard at all. Instead, he argues that chilling effects are insufficient to overcome *Younger* and cites *Simopoulos v. Virginia Board of Medicine,* 644 F.2d 321 (4th Cir. 1981) for the proposition that abstention is required whenever a state forum is adequate. YB 13-14. These arguments are puzzling. Mayday does not argue against abstention on grounds that its speech has been chilled—it argues abstention is improper because Defendant has threatened an illegitimate retaliatory state action. Nor does *Simopoulos* help. The plaintiff there invoked a different *Younger* exception, challenging the underlying statutes as "flagrantly and patently unconstitutional." *Id.* at 323, 328. He never argued retaliation, so the court had no occasion to apply it. *Id.* at 329 ("no claim of official lawlessness"). Defendant reads the case to require proof of bad faith *plus* a separate showing of forum inadequacy. *See* YB 13-14. But *Simopoulos*

10

explained that bad faith *inherently* "afford[s] the plaintiff no adequate state remedy for the resolution of his constitutional claim." 644 F.2d at 328. Thus under *Simopoulous*—as under *Cullen*, 18 F.3d at 104—if Mayday establishes an improper motive, abstention is improper.

## II. Mayday Will Suffer Irreparable Harm Absent an Injunction.

Defendant concedes Mayday has and will suffer irreparable harm if the Court concludes its speech is protected. MOL 5. Because it is, this factor is met. Mot. 17-18. In fact, the need for relief is greater now as intermediaries have begun refusing to host Mayday's speech for fear of government retribution. *See* Kelly Decl. ¶¶ 6-7 (billboard companies refusing Mayday's signs for this reason; at least one social media platform suspending Mayday's account).

## III. Mayday Satisfies the Remaining Preliminary Injunction Factors.

Defendant concedes that equity and the public interest would support an injunction if Mayday's speech is protected. MOL 6. Dr. Ridder's testimony (ECF No. 36-1) respectfully does not change that conclusion, as the First Amendment does not give way to one physician's opinion about alleged dangers posed by medications approved by the FDA for safe use. Mot. 18.

## CONCLUSION

Mayday respectfully requests an order entering a preliminary injunction.

Dated: Los Angeles, California
January 28, 2026

Respectfully submitted,

By: /s/     *Adam S. Sieff*
          Adam S. Sieff

| | |
|---|---|
| Adam S. Sieff\* <br> DAVIS WRIGHT TREMAINE LLP <br> 350 South Grand Avenue, 27th Floor <br> Los Angeles, California 90071-3487 <br> 213.663.6800 (tel) <br> adamsieff@dwt.com <br><br> Ambika Kumar\* <br> Nicole Saad Bembridge\* <br> DAVIS WRIGHT TREMAINE LLP <br> 920 Fifth Avenue, Suite 3300 <br> Seattle, Washington 98104-1610 <br> 206.622.3150 (tel) <br> ambikakumar@dwt.com <br> nicolesaadbembridge@dwt.com | Chelsea T. Kelly (SDNY No. CK2016) <br> Laura R. Handman (SDNY No. RH5353) <br> Azeezat Adeleke\*\* <br> DAVIS WRIGHT TREMAINE LLP <br> 1301 K Street NW, Suite 500 East <br> Washington, D.C. 20005-3317 <br> 202 973.4200 (tel) <br> chelseakelly@dwt.com <br> laurahandman@dwt.com <br> azeezatadeleke@dwt.com <br><br> \*Admitted *pro hac vice* <br> \*\* *Pro hac vice* application forthcoming |

*Attorneys for Plaintiff Mayday Health*

## CERTIFICATION OF WORD COUNT

I certify that the qualifying portions of the foregoing memorandum of law contains 3,444 words and therefore complies with Local Rule 7.1(c) and this Court's Individual Rules of Practice in Civil Cases.

/s/   *Adam S. Sieff*
Adam S. Sieff
