UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MAYDAY HEALTH,** | |
| *Plaintiff,* | |
| v. | CIV 26-78-KPF |
| **MARTY J. JACKLEY,** Attorney General for the State of South Dakota in his official capacity, | |
| *Defendant.* | |

**REPLY RE: *YOUNGER* ABSTENTION**

Defendant Marty J. Jackley, *pro se* and by and through his counsel Paul S. Swedlund, hereby files this reply re: plaintiff's *Younger* authorities. Defendant files this for the limited purpose of distinguishing the principal cases cited in Mayday's reply in support of is motion for preliminary injunction as the pre-hearing briefing schedule did not allow time for defendant to file a reply in support of his *Younger* abstention brief. As discussed below, like the *Bigelow* and *James* cases, Mayday's cited authorities actually work against them:

- ***United States v. Hansen,* 500 U.S. 762, 771 (2023)** – Mayday cites *Hansen* for the proposition that it "does not help any person specifically intending 'to bring about a particular unlawful act'" (Docket 40 at 3), but that *exactly* what it does. As reflected in the mission statement posted on Mayday's website (for the purpose of soliciting charitable contributions) it "provide[s] information about how people can get mail-order abortion pills" intending them for delivery "in all 50 states, regardless of harmful state restrictions:"

> Mayday Health: How To Get Abortion Pills
> **Does your employer use Benevity for corporate matching?** If so, search for us there to ensure that your emplyer is supporting our work as well!
>
> Mayday Health is a nonprofit that exists to provide information about how people can get mail-order abortion pills, birth control, emergency contraception, and gender affirming care in all 50 states, regardless of harmful state restrictions.

KLEMANN AFFIDAVIT, Docket 35/Exhibit A at Exhibit 6. Per *Hansen,* solicitation and facilitation "[b]oth require an intent to bring about a particular unlawful act." *Hansen,* 599 U.S. at 771. Though, words alone are "enough" to solicit or facilitate, Mayday goes beyond words with links to pill providers and terms of sales, price quotes and delivery times. This reflects a clear "intention as respects the effect to be produced" by its website. Mayday exists to do what its platform providers cannot do themselves in South Dakota, advertise their product directly to purchasers, and it does so with the admitted intent of providing abortion pills "in all 50 states, regardless" of state laws. Mayday is being deceptive, fraudulent, and false by failing to inform consumers and contributors of the material fact that they are facilitating a criminal act. SDCL 37-24-6(1). It stands to reason that some consumers and contributors in certain states would not patronize or contribute to Mayday's website if they understood that it is soliciting or facilitating a specific illegal act in a specific state (as opposed to just skirting vague "harmful state restrictions" in unspecified states).

- ***United States v. Williams,* 553 U.S. 285 (2008)** – *Williams* does not assist Mayday's point that it is merely engaged in abstract advocacy of illegality. Per *Williams,* protection for such advocacy ends when a speaker "refers to the recommendation of a particular [abortion pill provider] with the intent of initiating a transfer." *Williams,* 553 U.S. at 300. Mayday induces, commences and initiates such transactions, connecting purchasers to particular sellers and even providing terms of sale. *Williams,* 553 U.S. at 298. Such particularized "offers to provide . . . what it is unlawful to possess have no social value and thus, like obscenity, enjoy no First Amendment protection." *Williams,* 553 U.S. at 297-298.

- ***United States v. Al-Timimi,* 2026 WL 71062 (4th Cir.)** – First, *Al-Timimi* endorses in concept at least the idea that the South Dakota trial court should address the First

2

Amendment question by observing that it has "the 'unique opportunity' afforded to the trial court finder of fact 'to evaluate the credibility of witnesses and to weigh the evidence.'" *Al-Timimi,* 2026 WL 71062 at *6. Second, unlike Al-Timimi's recruitment speeches, which simply exhorted others to train for *jihad* "without any recommendation as to how or when" specific illegal acts might be performed, Mayday's website is structured to "induce or commence illegal activities," is likely "to produce imminent lawless action," and is done so with a "specified . . . time frame in which these actions should be completed" and with "details as to how they should be carried out." *Al-Timimi,* 2026 WL 71062 at *7-*9. Usage of the abortion pill is time sensitive to within a certain number of weeks post LMP. Though Mayday states that "it matters not" that it conveys its pill merchants' "terms of sale such as price quotes and product delivery times" (Docket 40 at 2), such "details as to how [abortion pill purchases can] be carried out" are relevant to intent per *Al-Timimi.*

- ***Conant v. Walters,* 309 F.3d 629 (9th Cir. 2002)** – *Conant* ruled that the First Amendment protected physicians who recommended marijuana as a palliative to HIV and AIDS patients. This "recommendation" did not in any way enable patients to obtain marijuana. Indeed, *Conant* found the recommendations protected because they were not "intend[ed] for the patient to use . . . as a means for obtaining marijuana, as a prescription is used as a means for a patient to obtain a controlled substance." If they were intended as a means to obtain marijuana, then "a physician would be guilty of aiding and abetting the violation of federal law." *Conant,* 309 F.3d at 635. As in the foregoing example of illegality in *Conant,* Mayday's "recommendations" for abortion pills are accompanied by the "means for obtaining" them in violation of state law. This places Mayday's activities outside the protections of passive, *Conant*-type recommendations or advocacy.

3

- ***First Resort, Inc. v. Herrera*, 860 F.3d 1263 (9th Cir. 2017)** – *First Resort* is very unhelpful to Mayday. In it, a pro-life clinic advertised that it provided abortion-related services while failing to mention its "anti-abortion stance or that it did not provide referral for abortion." *First Resort*, 860 F.3d at 1268, 1277. According to *First Resort*, advertising "through which patronage of the clinic [wa]s solicited . . . constitute[ed] classic examples of commercial speech." *First Resort*, 860 F.3d at 1273. Such speech competed in the marketplaces of both services and ideas in that First Resort "view[ed] its advertising as competing with that of abortion providers for the attention of online viewers." *First Resort*, 860 F.3d at 1274. First Resort's claim of providing its services for free did not eviscerate its essential commercial character, particularly in light of the fact that "First Resort engage[d] in fundraising efforts" off its messaging to fund its operations and compensate its employees. *First Resort*, 860 F.3d at 1276. Mayday likewise competes in the marketplaces of both services and ideas, promoting abortion in competition with pro-life messaging sources, facilitating medicinal abortion, and fundraising off its ability to deliver abortion pills to "all 50 states" while failing to mention that such transactions are illegal in many "red state" pill destinations.

- ***Cullen v. Fliegner*, 18 F.3d 96 (2nd Cir. 1994)** – *Cullen* is materially, factually inapposite. The district court in *Cullen* found bad faith because the school district's "haphazard method of enforcement failed to provide adequate notice of the 100-foot [electioneering] boundary" that Cullen had been accused of violating and "therefore his conduct did not (and could not) constitute a criminal violation." *Cullen*, 18 F.3d at 101. The school district had failed to comply with a statute that "explicitly require[d] the posting of 'distance markers at a distance of one hundred feet from the polling place.'" *Cullen*, 18 F.3d at 101.

The record reflected past disciplinary issues with Cullen, selective enforcement of the boundary against Cullen, and the school board's desire "to do something about" Cullen. *Cullen*, 18 F.3d at 104. Also, the proceeding Cullen sought to enjoin was a school board disciplinary panel with no particular expertise in adjudicating First Amendment defenses. *Cullen*, 18 F.3d at 101. In light of these facts, the *Cullen* court fund that, when the school district itself had failed to comply with state law by posting the 100-foot boundary necessary for a criminal prosecution, it had "no reasonable expectation of obtaining a favorable outcome." *Cullen*, 18 F.3d at 104. *Cullen* is inapposite here because there is no "haphazard" ambiguity in the state statute's prohibition on abortion pill importation, selective enforcement, or history of animus toward generic, pro-abortion advocates like JEN possibly animating the state's action against Mayday. Indeed, Mayday targeted South Dakota for its ads precisely because it *knows* such transactions are illegal. And unlike the lay disciplinary panel in *Cullen,* a state circuit court is an adequate forum for the adjudication of Mayday's First Amendment defense.

- ***Brooklyn Institute of Arts and Sciences v. Cit of New York,* 64 F.Supp.2d 184 (E.D.N.Y. 1999)** – *Brooklyn Institute* is firstly distinguishable from the nature of the speech at issue, which was artistic expression, not commercial speech. Such core speech, and the subjectivity of the city's opposition to it, is not comparable to a lesser form of speech or the entirely objective standards behind the state's enforcement action here. What is "art" or "offensive" is highly subjective; the explicit statutory prohibition on abortion pill importation is not. Hence the former is subject to greater protection than the latter. Moreover, the *Brooklyn Institute* court found that the city had failed at meeting *Younger* standards in three ways: (1) "there simply was no ongoing state proceeding at the time" the

federal proceeding was commenced, (2) a "generic proceeding," like the ejectment proceeding brought after the commencement of the federal action, was not the type of action that rose to the level of an important state interest, and (3) the "ejectment proceeding [did] not give the [federal plaintiff] the kind of opportunity to present its constitutional claims that *Younger* abstention requires." *Brooklyn Institute*, 64 F.Supp.2d at 194. Here, unlike in *Brooklyn Institute*, the predicate *Younger* elements are easily satisfied.

- ***Bose Corp. v. Consumers Union,* 466 U.S. 485, 503-514 (1984)** – *Bose Corp.* is facially inapposite because Mayday is not providing an objective, informative, consumer review of the merits of one abortion pill over another or recommending use of *this* abortion pill over *that* one. Here, Mayday is indiscriminately funneling females to abortion pill providers in general, and those willing to illegally ship to "all 50 states" in particular, all with the express intent of delivering pills "regardless" of South Dakota's laws.

- ***Diamond "D" Const. Corp. v. McGowan,* 292 F.23d 191 (2nd Cir. 2002)** – Like Mayday's other cited cases, *Diamond "D"* exposes its tendency to cherry-pick passages or *dicta* from an opinion to assert a premise that is ultimately unsupported by the case it cites or the facts here. Mayday relies on *Diamond "D"* for the sweeping premise and reductivist principle that "subjective motivation of the state authority in bringing the proceeding is . . . determinative of" the *Younger* inquiry, as in whatever a federal plaintiff alleges the subjective motivation of state officials to be must be accepted as true. *Diamond "D"*, 282 F.3d at 199. However, as *Diamond "D"* stated, such "generic" allegations are not dispositive. *Diamond "D"*, 282 F.3d at 199. When, as here, there is "no credible allegation that the [state court] is incompetent by reason of bias to adjudicate" the operative constitutional question, and the state action is "nothing more than a straightforward

enforcement of the [state's] laws," *Younger* abstention is appropriate if not mandated. *Diamond "D"*, 282 F.3d at 199, 200, 201. Other than Mayday's invocation of "generic" subjective-bad-faith boilerplate, there is no evidence of bad faith here. The Attorney General received 657 informal consumer complaints regarding Mayday's advertisements, he received a formal consumer complaint from a gas station owner who wanted Mayday's placards removed without breaching contractual obligations to the vendor that placed them, he was requested by the Governor per statutory mechanisms to investigate Mayday, he was aware of at least facial evidence of Mayday's solicitation and facilitation of criminal transactions in the state of South Dakota, he has no record of unfounded enforcement actions against pro-abortion groups like JEN whose South Dakota operations conform to First Amendment parameters, and he brought the least intrusive action available to get Mayday's attention and convince it to stop. In the face of "the strong policy in favor of abstention," Mayday's "generic" invocations of "bad faith" are insufficient here to evidence retaliation or harassment. *Diamond "D"*, 282 F.3d at 198, 199.

A closer examination of the principal cases Mayday cites in its reply reveals that these cases harm Mayday's position that its speech is non-commercial and protected more than they help. Accordingly, this court should deny the request for a preliminary injunction and, if not outright dismiss, abstain per *Younger*.

Dated this 2nd day of February 2026.

**MARTY J. JACKLEY**
**ATTORNEY GENERAL**

*Paul S. Swedlund*

Paul S. Swedlund
SOLICITOR GENERAL
1302 East Highway 1889, Suite 1
Pierre, South Dakota 57501-8501
Telephone: 605-773-3215
paul.swedlund@state.sd.us