```
                     UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
             ----------------------------:

MAYDAY HEALTH,                          : Docket No.: 26-cv-00078

                    Plaintiff,     :

            v.                          :

MARTY J. JACKLEY,                       : New York, New York

                                        : February 11, 2026

                    Defendant.     :

             ----------------------------:


                         PROCEEDINGS BEFORE
                 THE HONORABLE KATHERINE POLK FAILLA
                    UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff:      DAVIS WRIGHT TREMAINE, LLP
                    BY:  ADAM SIEFF, ESQ.
                         CHELSEA KELLY, ESQ.
                         AMBIKA KUMAR, ESQ.
                    350 S. Grand Avenue, 27th Floor
                    Los Angeles, California 90071

For Defendant:      OFFICE OF THE ATTORNEY GENERAL
                    OF SOUTH DAKOTA
                    BY:  MARTY J. JACKLEY, ESQ.
                         AMANDA MILLER, ESQ.
                         PAUL SWEDLUND, ESQ.
                    1302 East SD Highway 1889, Suite 1
                    Pierre, South Dakota 57501

Transcription Service: Marissa Lewandowski
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

THE DEPUTY CLERK:  Your Honor, this is in the matter of Mayday Health vs. Jackley.

Counsel, please state your name for the record, beginning with plaintiff.

MR. SIEFF:  Good afternoon, Your Honor. This is Adam Sieff of Davis Wright Tremaine for plaintiff.  I am joined on the line with Counsel Chelsea Kelly and Ambika Kumar.

THE COURT:  Good afternoon.  This is Judge Failla.  And I'm just confirming, Mr. Sieff, that you and your team are able to hear me.

MR. SIEFF:  Confirmed, Your Honor.  We can hear you.

THE COURT:  Much appreciated, thank you.

And then representing Mr. Jackley this afternoon, which includes Mr. Jackley.

MR. JACKLEY:  Good afternoon, Your Honor and Counsel.  South Dakota Attorney General Marty Jackley, Civil Chief Amanda Miller, and Solicitor General Paul Swedlund.

THE COURT:  Thank you all very much.  Happy to have you all participating in this conference this afternoon.

What I am going to do now is to read into the record my oral decision.  And I decided to give

an oral decision because I wanted to get information to you as quickly as possible.  So I'll give you an opportunity to mute yourselves because there isn't oral argument, and I'll begin momentarily.  Thank you.

Let me begin also by thanking you for your written submissions and for your oral presentations on January 16th and 29th of this year.  I've considered all of those.  I've considered as well, the post-hearing submission from Mr. Jackley.  And I will now issue my oral decision on plaintiff's motion for a preliminary injunction.

As just a bit of procedural review, this Court heard a telephonic oral argument on plaintiff's motion for a temporary restraining order on January 16th of 2026.  It issued an oral decision later that day granting the motion.  And my oral decision was by my standards, long for an oral decision, it was nine pages.  And I am incorporating here its discussion about the background section, the applicable law for a temporary restraining order, and its analysis of personal jurisdiction under New York's long-arm statute, which is founded Civil Practice Law and Rule Section 302(a).

And so I won't be repeating those

discussions here, but I will simply add to the injunctive relief discussion what the parties already know to be the standard, which is that a party seeking a preliminary injunction must show a likelihood of success on the merits, the possibility of irreparable harm if preliminary injunction is not granted, a balance of hardships tipping in the moving party's favor and the public's interest being served, or at least not disserved by relief.  One case for that proposition is *Salinger v. Colting*, 607 F.3d 68, a Second Circuit decision from 2010. Where a state or federal government is a party, then factors three and four often merge.  One case for that is *Nken vs. Holder,* 556 U.S. 418 from 2009.

So those things that I've just mentioned are what I'm not reconsidering.  But what I have reconsidered is my Younger abstention analysis, and that is in light of the parties' submissions and my own research.  In particular, and for the reasons that I'm about to describe, I do believe that the law requires me to abstain from exercising federal jurisdiction in this case, and as a result, I am denying plaintiff's motion for a preliminary injunction.

So I am focusing my discussion this

afternoon on Younger abstention law.  I know that the parties are aware of Younger abstentions, so I'll discuss it in rather brief terms.  It was summarized by the Second Circuit in the case of *Diamond "D" Construction Corporation vs. McGowan*, 282 F.3rd 191, in 2002.  But rather than read all of these cites into the record, I'm just going to excerpt a couple of quotes that I think are important.

The Circuit found that *Younger v. Harris*, 401 U.S. 37, from 1971, generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.  Although the Younger abstention doctrine was born in the context of state criminal proceedings, it now applies with equal force to state administrative proceedings.  This doctrine of federal abstention rests foursquare on the notion that in the ordinary course, a state proceeding provides an adequate forum for the vindication of federal constitutional rights.  Therefore, giving the respect to our coequal sovereigns, the principles of our federalism demand we generally prohibit federal courts from intervening in such matters.  That is the end of my

quotation from that case.

Younger abstention is mandatory when, number one, there is an ongoing state proceeding; number two, an important state interest is involved; and number three, the plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding. Cases for that proposition include *Spargo v. New York State Commission on Judicial Conduct*, 351 F3d 65, a Second Circuit decision from 2003. When Younger applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter. And that is found in cases including *Colorado Water Conservation District versus United States*, 424 U.S. 800 from 1976.

There are two exceptions recognized for Younger abstention. They're commonly referred to as the bad faith and extraordinary circumstances exceptions. In connection with the TRO hearing, plaintiffs suggested that the bad faith exception applied and as cited support the Second Circuit's decision in *Cullen vs. Flagler,* 18 F.3rd 96 from 1994 and Judge Gershon's decision in *Brooklyn Institute of Arts and Sciences v. City of New York*, 64 F. Supp. 2d 184, an Eastern District decision

from 1999.

After the TRO hearing and in connection with the preliminary injunction hearing, I did a deeper dive into Second Circuit case law in this area, which made it clear that the bad faith exception and the inquiry into it was more nuanced than it originally appeared. The *Cullen* case that I mentioned was one of the first in the Circuit to articulate the exception.

And here again, rather than putting citations into the record, I'm going to excerpt a few quotes from the decision. "Intervention would still be warranted upon a showing of bad faith, harassment or any other exceptional circumstance that would call for equitable relief. Generally, for such a showing to be made, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome. But a refusal to abstain is also justified where a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass."

In that case, the Second Circuit found that based on a past history of personal conflict between

the plaintiff and the local school board, the strictly ad hominem manner in which the school board had disciplined him, they found that the school board disciplinary proceedings were retaliatory in nature and calculated to chill First Amendment expressive activity.

But later Second Circuit cases made clear that the bad faith exception also has a subjective component to it.  One of those cases is *Schlagler v. Phillips*, 166 F.3rd 439, from 1999.  The plaintiff in that case had posted pro-skinhead stickers in a Cafe in Monroe, New York and was charged with aggravated harassment under the New York penal law. While the criminal case was pending, he brought a Section 1983 action challenging the statute on First Amendment grounds.  The district court rejected the state's Younger argument, concluding that although there was no evidence of any prosecutorial animus towards Schlagler, the statute itself was facially unconstitutional and therefore any prosecution under it could only be brought in bad faith.  The Second Circuit reversed, reasoning that because the prosecution was not retaliatory or otherwise illegitimate in its motivation and in fact was nothing more than a straightforward enforcement of

the laws of New York, I found the case did not fall within the bad faith exception.  In particular, the Court in *Schlagler* found that the district court's focus on the First Amendment and the issues related to the First Amendment, and I'm now going to quote, "Undercuts the rationale set forth in Younger, which was also a First Amendment challenge to a state criminal prosecution.  Younger narrowly limited exceptions to cases involving retaliatory or bad faith efforts to regulate speech.  If the district court's interpretation of the *Cullen* exception were followed to its logical conclusion, the exception would swallow the Younger rule."

Later on, the Court found that if the facts show that the prosecution is in retaliation for past speech or shows a pattern of prosecution to inhibit speech beyond the acts being prosecuted, the exception should apply and abstention may be improper.  It wasn't found there, and therefore, the Court ruled as it did.

Later on in 2002, the Second Circuit tried to harmonize its case law on the bad faith exception.  And that was in the *Diamond "D" Construction Corporation* case I mentioned a few moments ago.  And that case detailed the history of

the exception in Second Circuit and Supreme Court case law.  But it concluded, and again here I'm excerpting without giving the cites, "Our most recent cases concerning the bad faith exception have further emphasized that the subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry.  A state proceeding that is legitimate in its purposes but unconstitutional in its execution, even when the violations of constitutional rights are egregious, will not warrant the application of the bad faith exception.  Later on, the Court finds that we give states the first opportunity, but not the only or last, to correct those errors of a federal constitutional dimension that infect its proceeding."

And then still later, the Court says, "Federal interference with state proceedings, because it necessarily presumes that the state court review will be inadequate, affronts the dignity of the state sovereign.  However, as we recognized in *Cullen*, a state has no interest in continuing actions brought with malevolent intent.  Thus, it is only when the state proceeding is brought with no legitimate purpose that the state interest in

correcting its own mistakes dissipates and along with it, the compelling need for federal deference." That's the end of that quote.

This court has reviewed all of these Second Circuit decisions on the bad faith exception issued after *Diamond "D"* -- actually, all of ones really issued after *Cullen*. And I will tell you that there are some instances in which there are short-hands to that are used that I think arguably conflate the requirements of the exception.

As one example of that, in the case of *Wilson v. Emond*, 373 F.App'x98 in 2010, a Second Circuit decision from 2010, the Court referred to the bad faith exception as covering cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction. And the Court there didn't really get into the subjective element, although I suppose the reference to bad faith may have made it implicit. And so there are some other cases that really don't speak at length about the subjective element, and they include *Weiss v. New York*, 2024 Westlaw 283-7623, *Daniel vs. Doe 1 through Doe 10*, 2024 Westlaw 213-1446, *Lowell v. Vermont Department of Children and Families* 835 F. App'x 637, and then

*Glatzer v. Barone* 394 F. App'x 763.

But there are other Second Circuit decisions that have confirmed the continuing importance of the subjective component of the bad faith inquiry.  They include the Second Circuit's 2020 decision as distinguished from its 2019 decision in *Trump vs. Vance* 977 F.3rd 198, *Miller vs. Sutton* 697 F. App'x 27 from 2017, *Schorr v. DoPico* 686 F. App'x 34 also from 2017, *Jackson Hewitt Tax Services Incorporated vs. Kirkland*, 455 F. App'x 16 Second Circuit decision from 2012.

And I'll note as well that in the case of *Kern vs. Clark*, 331 F.3d 9, a Second Circuit decision from 2003, they actually remanded to the district court for a hearing on the subjective element of the bad faith exception.  And the quote of import there is, "In the present case, the factfinder could infer bad faith or improper motive if it credited the evidence that Kern claims demonstrates that the defendants aggressively prosecuted him in a string of weak cases brought on behalf of Kern's political enemies."

So turning now to my analysis, with that case law out of the way, as suggested by my TRO decision and my questioning two weeks ago, I find

that the pending civil enforcement action under SDCL Section 37-24-23 meets all three of the Younger criteria, and that for me the remaining question was whether the bad faith exception applies.  I find that it does not.

Focusing first on the subjective analysis, the Court cannot find on the record before it subjective bad faith on the part of Mr. Jackley. The South Dakota Attorney General's Office received numerous complaints, formal and informal, regarding Mayday's gas station placards.  Mr. Jackley was requested by the Governor of South Dakota to look into the matter.  And to be clear, I don't find that to be an indication of pretext or bad faith, and I don't think it is analogous to what happened in Judge Gershon's decision.  Mr. Jackley then sent a cease and desist letter to Mayday.  I understand him to have considered proceeding under South Dakota Criminal Statutes concerning solicitation and facilitation, but to have instead chosen the less drastic option of a civil enforcement action under South Dakota's deceptive trade practices statute. Mr. Jackley also cited the example of, all caps, JEN as an abortion rights organization whose conduct he believes balances First Amendment rights of free

expression with South Dakota laws restricting abortion access.  On the objective front, I cannot say that Mr. Jackley has no reasonable expectation of obtaining a favorable outcome in the civil enforcement action.

Now, as I will elaborate in just a moment, I do believe that the proper way to view Mayday's website and the materials on it is noncommercial speech subject to protection under the First Amendment.  But I understand that Mr. Jackley holds a different view and believes that abortion pill providers who cannot sell their products in South Dakota are using Mayday as an end run around the restrictive statutes of that state such that the speech is commercial and potentially within the ambit of the statute that I cited earlier, and I think he should be permitted to pursue those arguments in South Dakota court.

In light of the findings I've just made, I am constrained to find that Younger abstention applies and that I lack jurisdiction to consider plaintiff's motion for a preliminary injunction. Now, as suggested by my introductory comments to the bad faith exception, federal courts have to trust their state court analogs, and I trust that the

South Dakota court will get it right.

Let me just note on that point that I've done my best here -- I suppose that goes without saying. I've done my best to interpret Second Circuit law on the Younger abstention doctrine and its bad faith exception. If I've gone too far, if I've misunderstood the law or where it is today, I invite the Second Circuit to clarify my jurisdictional obligations to clarify the bad faith exception and, as appropriate, to reverse me. And I say that not because I'm here tempting fate, but because unless there be any doubt about this, I absolutely agree that this case is the mirror image of the factual situation presented in the Second Circuit's late 2025 decision in *National Institute of Family and Life Advocates v. James*, 160 F.4 360. I think that the Second Circuit's analysis applies equally here and that absent Younger abstention, this Court would be granting plaintiff's motion for injunctive relief. My read -- what the materials I have before me suggest that Mayday's website contains, under what I will call the NIFLA case, noncommercial speech. It is speech that is based on moral beliefs with no economic motivation. The plaintiff does not charge the patrons of the website

or the service providers for referrals and the fact that the website solicits donations does not transform its contents into commercial speech, as made clear by cases including *Connecticut Bar Association vs. United States*, 620 F.3d 81, a Second Circuit decision from 2010. That in turn focused on the Supreme Court's 1988 case in *Riley v. National Federation for the Blind*. The *NIFLA* case as well made clear that if its holding were different than it was, it could potentially inappropriately limit a reproductive rights group in a state with abortion restrictions that provides information about out of state organizations that will help women obtain the procedure for free. I also do not believe that the website solicits or abets acts that are illegal under South Dakota law. And here I'll just cite to the parties *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, and the section that I was focusing on is found at pages 253 to 254.

And so as a result, I mean, I suspect -- or let me say it this way, if I had jurisdiction, which I don't believe I do, I think the South Dakota statute would be subject to strict scrutiny analysis and we would see whether it was narrowly tailored to serve a compelling state interest under NIFLA, the

answer would probably be no.  Indeed, if in fact a court were to find that the statute was noncommercial speech, not sure the statute cited to me under South Dakota law would be applied at all.  But as it happens, I have to decide this issue on jurisdictional grounds and given that I am deciding the matter the way I am, I'm denying the motion.  I think the next steps for the parties would be -- and I will issue an order to show cause to explain in writing why I should not dismiss this matter for lack of jurisdiction.  I'm going to ask the parties to file simultaneous letter briefs on or before March 2nd, 2026.  I'm going to direct the clerk of court to terminate the motions that are currently pending at docket entries 14 and 20.  I will issue a bottom line order later today that includes the order to show cause language but also gives a written document in case either side wishes to take an appeal.  And given the disposition of the motion and my issuance of an order to show cause, I am staying Mr. Jackley's obligation to answer, move, or otherwise respond until after the order to show cause is resolved.

Mr. Sieff, is there anything that is unclear about the decision that I've just issued?

MR. SIEFF:  No, Your Honor.  I think that that was an extremely helpful explanation of your reasoning, and we appreciate all aspects of the order, and we understand the next steps with respect to responding to the order to show cause.

THE COURT:  I appreciate that.  Thank you. And let me say this, Mr. Sieff, something I hadn't considered, and I'll say this for both sides, is I suppose if either side were to file an appeal from this decision, you'd have to let me know your view as to whether I had jurisdiction to do anything on the order to show cause.  But if you'll excuse my grandmother's old expression, we'll burn that bridge when we get to it.

Mr. Jackley, is there anything that is unclear about my decision?

MR. JACKLEY:  Your Honor, I want to be completely respectful of what the Court has said and noting the March 2, 2026 order to show cause filing date.  We have a state court hearing scheduled for February 20th.  Is it the Court's ruling that that can proceed, or do I need to seek a continuance?

THE COURT:  Very fair, sir.  Right now, I have denied the plaintiff's application for injunctive relief.  I don't even think I have

jurisdiction with this to proceed with the case that is before me.  I don't have the power to stop you or to stop the state court from proceeding.

MR. JACKLEY:  Thank you, Your Honor.

THE COURT:  Of course, sir.  Now, if anybody were to tell me otherwise -- if the Second Circuit disagrees, they'd let me know.  But no one's told me that yet, and I think the clock is ticking. So I very much appreciate your inquiry so that I could clarify my decision to the extent it was unclear.

MR. JACKLEY:  Thank you, Your Honor.

THE COURT:  All right.  I thank you all very much.  I know you've been working very hard on very short time frames.  I really do appreciate your efforts.  I will let you go because I know you have other things to do.  You have my thanks.  We're adjourned.

C E R T I F I C A T E


     I, Marissa Lewandowski, certify that the foregoing transcript of proceedings in the case of Mayday Health v. Jackley, Docket #1:26-cv-00078-KPF, was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature  ___*Marissa Lewandowski*___

           Marissa Lewandowski


Date:      February 12, 2026