# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MAYDAY HEALTH,** | * |
| *Plaintiff,* | * |
| v. | 1:26-cv-00078-KPF |
| **MARTY J. JACKLEY,** Attorney General for the State of South Dakota in his official capacity, | * |
| *Defendant.* | * |

## DEFENDANT'S MEMORANDUM OF LAW RE: DEFENDANT'S RESPONSE TO THIS COURT'S ORDER TO SHOW CAUSE AS TO WHY THIS CASE SHOULD NOT BE DISMISSED FOR LACK OF JURISDICTION.

Defendant, South Dakota Attorney General Marty J. Jackley, *pro se*, and by and through his counsel, Deputy Attorney General Amanda J. Miiller, respectfully submits this memorandum of law in response to the Court's Order to Show Cause as to why this case should not be dismissed for lack of jurisdiction.

## BACKGROUND

The State of South Dakota, through the South Dakota Office of the Attorney General, commenced a civil enforcement proceeding against Mayday Health (Mayday) on December 22, 2025, in the Sixth Judicial Circuit Court, Hughes County, South Dakota, file #32CIV25-339. On January 6, 2026, Mayday filed a complaint for injunctive and declaratory relief against Attorney General Marty Jackley in the instant action. In a hearing held February 11, 2026, this Court concluded that it must abstain under the *Younger* abstention doctrine.

## ARGUMENT

### A. The Court must abstain under *Younger*.

Under the *Younger* abstention doctrine, federal courts must "abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state

proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger v. Harris*, 401 U.S. 37, 43-444, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)). Abstention is required if the following three conditions are met: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id.* (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir.2001)). "[W]hen *Younger* applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." *Id.* at 197 (citing *Colorado Water Conserv. Dist. v. United States*, 424 U.S. 800, 816 n. 22, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)). Here, all three conditions have been met, and the Court must abstain.

1. **There is an ongoing state proceeding.**

    a. **This Court correctly found that a state civil enforcement proceeding is pending that requires abstention.**

Courts have generally held that "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.'" *Gristina v. Merchan*, 131 F.4th 82, 86 (2d Cir.), *cert. denied*, 146 S. Ct. 248 (2025) (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989)). From this notion came three identifiable classes of cases requiring abstention: "(1) where there is a pending state criminal prosecution; (2) where there is a pending civil enforcement proceeding; or (3) where there is a pending civil proceeding uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* This Court correctly determined that an ongoing state civil enforcement proceeding was pending under SDCL § 37-24-23. Exhibit A at page 12-13, lines 25, 1-5. Not only does the ongoing state proceeding meet the definition of a civil enforcement proceeding, but it also meets the

requirements of a qualifying civil proceeding for *Younger*. "When the state proceeding is civil rather than criminal, the action must be 'in aid of or closely related to' criminal statutes, the state must be a party, and an important state enforcement policy must be at stake for *Younger* to apply." *OMYA, Inc. v. Vermont*, 80 F. Supp. 2d 211, 215 (D. Vt. 2000) (quoting *Huffman v. Pursue*, 420 U.S. 592, 604 (1975). The state statute, SDCL § 37-24-23, comes from the South Dakota Deceptive Trade Practices and Consumer Protection Act, which permits a civil injunction action for the South Dakota Attorney General when it is believed SDCL § 37-24-6 has been or will be violated. But SDCL § 37-24-6 does not limit the Attorney General to civil remedies—it also permits the Attorney General to pursue felony criminal charges. As to an important enforcement policy, "courts have repeatedly held that state actions to enforce consumer-protection statutes and laws against deceptive business practices are sufficiently important for *Younger* purposes." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 410 (S.D.N.Y. 2014) (citations omitted). Because the State is a party to this ongoing civil enforcement proceeding that is closely related to a criminal statute and it invokes an important enforcement policy, the first *Younger* element is met.

    **b.  The South Dakota State Court affirmed there are ongoing state proceedings.**

The State filed its civil enforcement proceeding on December 22, 2025. It did so under the special commencement statutes found in SDCL § 37-24-16 and SDCL § 37-24-23, where a motion for injunction may be filed in state court and served via certified mail. Exhibit B, page 6, lines 19-22. After Mayday filed this federal action in response, the State obtained a valid address for Mayday for personal service of process. However, due to the pending federal proceeding and this Court's ensuing restraining order, no further action was taken regarding service of process in the state court case. Exhibit B, page 14, lines 11-19. After this Court denied Mayday's request

for a preliminary injunction and found it did not have jurisdiction, the State personally served Mayday with a summons and complaint on February 18, 2026.  Exhibit B, page 3, lines 7-13.

A hearing was held in the state court case on February 20, 2026.  Citing personal service of the summons and complaint, the state court concluded that an action had been properly commenced and that it had jurisdiction to continue with the proceeding.  Exhibit B, page 15, lines 17-22.  The court ordered a trial to be set for July of 2026.  Despite having held that an action had not commenced until personal service was effectuated, the state court did not hold that a new proceeding had begun with the service of the summons and complaint.  Accordingly, the court kept the matter on the same court filing docket that had been created when the state filed its initial motion under SDCL § 37-24-23.  Exhibit B, page 15, lines 17-22.

Initially, the fact that the state court concluded that an action had not yet commenced until personal service of the summons and complaint is not germane to this Court's decision for abstention purposes.  This is because the proceeding was pending when the Court made its decision to abstain.  Case law in the Second Circuit "clearly indicates that the *Younger* abstention issue is evaluated at the time of filing, and it is not continuously re-evaluated throughout the pendency of a proceeding."  *Gristina*, 131 F.4th at 87.  At the time of filing, as it is now, the proceeding in state court was ongoing.

Even if this Court were to consider the events that occurred after its decision to abstain, there is a fundamental difference between the commencement of an action, which is what the state court determined, and the life cycle of a proceeding.  A proceeding "is more comprehensive than the word "action[.]"  Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3-4 (2d ed. 1899); *see also Black's Law Dictionary*, 459 (12th ed. 2024).  A proceeding "may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment."  *Id*.  As a result, a

4

proceeding includes the commencement of an action, but it also includes all appearances, motions, and the taking of appeal, among other activities. *Id.* The Second Circuit recognized this expanded concept of a proceeding in the context of *Younger* when it held that "[a] civil proceeding is pending if further state appellate remedies are available at the time of filing the federal complaint." *Gristina*, 131 F.4th at 86. Here, in the state case, the court kept the entire proceeding on the same court filing docket it created when the state filed its initial motion on December 22, 2025. As a result, the state court proceeding has been continuously ongoing since December 22, 2025.

       Finally, *Younger* mandates abstention because this Court has not proceeded to a hearing on the merits. The United States Supreme Court has provided "that where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). There is no logical reason why this basic tenet should not equally apply to the commencement of a civil enforcement proceeding. This Court's proceedings thus far have been a telephonic hearing that resulted in an emergency temporary restraining order and oral argument regarding *Younger* abstention that culminated in it denying a motion for preliminary injunction and finding it did not have jurisdiction. Exhibit A, page 4, lines 15-24. Indeed, this Court acknowledged at its last hearing that it has not yet advanced to considering evidence or arguments regarding Mayday's motion for preliminary injunction. Exhibit A, page 14, lines 19-22. Because there have not yet been proceedings of substance on the merits of Mayday's complaint, the Court must abstain even if the state case was subsequently commenced.

    **2. An important State interest is implicated.**

"[C]ourts have repeatedly held that state actions to enforce consumer-protection statutes and laws against deceptive business practices are sufficiently important for *Younger* purposes." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 410 (S.D.N.Y. 2014) (citing *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 880 (8th Cir.2002); *Williams v. State of Washington*, 554 F.2d 369, 370 (9th Cir.1977); *Merck Sharp & Dohme Corp. v. Conway*, 909 F.Supp.2d 781, 785 (E.D.Ky.2012); *MyInfoGuard*, 2012 WL 5469913, at *8; *Marathon Petroleum Co. v. Stumbo*, 528 F.Supp.2d 639, 645 (E.D.Ky.2007); *Arbitron Inc. v. Cuomo*, No. 08 Civ. 8497(DLC), 2008 WL 4735227, at *5–6 (S.D.N.Y. Oct. 27, 2008); *Williams v. Lubin*, 516 F.Supp.2d 535, 539–40 (D.Md.2007); *Goleta Nat. Bank v. Lingerfelt*, 211 F.Supp.2d 711, 716 (E.D.N.C.2002); *Bologna v. Allstate Ins. Co.*, 138 F.Supp.2d 310, 327 (E.D.N.Y.2001); *State Farm Mut. Auto. Ins. Co. v. Metcalf*, 902 F. Supp. 1216, 1218 (D. Haw.1995); and *Bays v. Edgar*, No. 87 C5045, 1988 WL 13639, at *3 (N.D. Ill. Feb. 17, 1988)). "Additionally, in other contexts, the Supreme Court itself has recognized that States have an important interest in protecting the public from deceptive business practices." *Id.* (citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460, 98 S. Ct. 1912, 56 L. Ed. 2d 444 (1978) ("general interest in protecting consumers and regulating commercial transactions" in stating that "the state interests implicated in this case are particularly strong"); *ARC Am. Corp.*, 490 U.S. at 101, 109 S. Ct. 1661 ("the long history of state common-law and statutory remedies against ... unfair business practices" makes "plain that this is an area traditionally regulated by the States"); *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651, 105 S. Ct. 2265, 85 L. Ed. 2d 652 (1985) ("the State's interest in preventing deception of consumers")). Here, the State of South Dakota undeniably has an important interest in enforcing its consumer protection statutes and the second element of the *Younger* test is met.

3. **Mayday has an adequate opportunity to litigate its claims in state court.**

The ongoing state civil enforcement proceeding affords Mayday an adequate opportunity to litigate its arguments concerning its First Amendment rights. "The notion of 'comity' includes 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982) (quoting *Younger*, 401 U.S. at 44, 91 S. Ct. at 750). "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Id.*

"So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for *Younger* purposes." *Hansel v. Town Ct. for Town of Springfield, N.Y.*, 56 F.3d 391, 394 (2d Cir. 1995). And "the burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.'" *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (quoting *Moore v. Sims*, 442 U.S. 415, 428, 99 S. Ct. 2371, 2379, 60 L. Ed. 2d 994 (1979)). Mayday has not, and cannot, show any barrier to adjudication of its First Amendment arguments in the state court. Accordingly, the third element of the *Younger* test is met, and this Court must abstain.

### B. An exception to the *Younger* doctrine has not been shown.

There are two "tightly defined exceptions to the *Younger* abstention doctrine: the bad faith exception and the extraordinary circumstances exception." *Schorr v. Dopico*, 205 F. Supp. 3d 359, 363–64 (S.D.N.Y. 2016), *aff'd*, 686 F. App'x 34 (2d Cir. 2017) (quoting *Jackson Hewitt, Inc. v. Kirkland*, 455 Fed. Appx. 16, 18 (2d Cir. 2012)). "To establish the bad faith exception to *Younger*, a plaintiff must show that the party bringing the state action 'has no reasonable

7

expectation of obtaining a favorable outcome,' but rather brought the proceeding due to a 'retaliatory, harassing, or other illegitimate motive.' *Id.* For extraordinary circumstances, a plaintiff must show "(1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." *Corren v. Sorrell*, 151 F. Supp. 3d 479, 488 (D. Vt. 2015).

At the outset, the extraordinary circumstances exception is clearly inapplicable. Mayday has an adequate state court remedy for any alleged constitutional violation it may bring at the trial set for July 14 and 15, 2026.

As to the bad faith exception, a plaintiff must "show subjective bad faith on the part of the defendants." *Schorr*, 686 F. App'x at 37; *see also Schlagler v. Phillips*, 166 F.3d 439, 442 (2d Cir. 1999). Subjective bad faith may be demonstrated by a showing "that the prosecution is in retaliation for past speech or shows a pattern of prosecution to inhibit speech beyond the acts being prosecuted[.]" *Schlagler*, 166 F.3d at 443. Subjective bad faith may also be demonstrated by a showing of continued or future prosecution under a statute that had previously been declared unconstitutional. *Id.* This is because such a showing would demonstrate that defendants had "no reasonable expectation of obtaining a favorable outcome." *Schorr*, 686 F. App'x at 37.

In the instant matter, Mayday has failed to make such a showing of bad faith. Mayday has not shown animus or past dealings with the State—because there are none. The Governor requested the Attorney General to conduct an investigation into Mayday, which is his statutory right under SDCL Chapter 1-11. An investigation was conducted, and it was determined that Mayday Health violated South Dakota's consumer protection laws. *See* Doc 1, Exhibit D, Affidavit of Klemann. The Attorney General engaged in a measured response by sending a

cease-and-desist letter to Mayday. *See* Doc. 1, Exhibit D, Affidavit of Klemann. Mayday refused to comply with the letter, so the Attorney General commenced a civil enforcement proceeding. *See* Doc. 1, Exhibit D, Affidavit of Klemann. Much like the case in *Schlagler*, these actions do not constitute "anything other than a straightforward enforcement of the laws of [the State.]" *Schlagler*, 166 F.3d at 443.

      Regarding free speech specifically, federal injunctive relief against valid, pending state civil enforcement proceedings is appropriate only when they are brought without a reasonable expectation of success. *Perez v. Ledsma,* 401 U.S. 82, 84 (1971). The "chilling effect" of state enforcement actions does "not by itself justify federal intervention" in state proceedings. *Younger,* 401 U.S. at 50. "[T]he existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Id.* at 51. Interference in state proceedings is not justified when "a statute does not directly abridge free speech, but – while regulating a subject within the State's power – tends to have the incidental effect of inhibiting First Amendment rights." *Id.*. Just as "the chilling effect that admittedly can result from the very existence of certain laws on the statute books does not in itself justify prohibiting the state from carrying out the important and necessary task of enforcing these laws," the incidental "'chilling effect' of [a state enforcement action] does not automatically render [it] unconstitutional." *Id.* at 52. If it did, any First Amendment impact would be automatic bad faith and *Younger* would be "swallowed up by its exception." *Hicks,* 422 U.S. at 352. As this Court noted "federal courts have to trust their state court analogs, and I trust that the South Dakota Court will get it right." Exhibit A, pages 13-14, lines 24-25, 1. There is no bad faith exception to *Younger* abstention here, and this Court must dismiss for lack of jurisdiction.

## CONCLUSION

This case meets all three requirements for *Younger* abstention, and neither of the tightly defined exceptions to abstention apply. As a result, the Court correctly determined that it must abstain, and dismissal is required for lack of jurisdiction.

Dated this 2nd day of March 2026.

          **MARTY J. JACKLEY**
          Attorney General
          State of South Dakota

          */s/ Amanda Miiller*
          By: Amanda Miiller
          *pro hac vice*
          Deputy Attorney General
          South Dakota Office of the Attorney General
          1302 East SD Highway 1889, Suite 1
          Pierre, SD 57501-8501
          Telephone: (605) 773-3215
          Email: amanda.miiller@state.sd.us

          *Attorneys for Defendant, Marty J. Jackley*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for the Defendant hereby certifies that this Memorandum of Law was prepared using the Microsoft Word Version 2010 word-processing program and contains 3,104 words in compliance with the Individual Rules of Practice in Civil Cases of the Honorable Katherine Polk Failla.

          */s/Amanda Miiller*
          By: Amanda Miiller
          *pro hac vice*
          Deputy Attorney General

## CERTIFICATE OF SERVICE

      I hereby certify that on the 2nd day of March, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of New York by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

                                                                              */s/Amanda Miiller*_____
                                                                              By: Amanda Miiller
                                                                              *pro hac vice*
                                                                              Deputy Attorney General